## A95A2497. HALL v. HOLBROOK et al.
### (469 SE2d 868)

Judge Harold R. Banke.

Barbara Hall filed suit against John Holbrook, James Corr and Canton Textile Mills, Inc. (collectively "CTM") for allegedly interfering with a sheriff's levy on inventory located in two storage units on Canton Textile Mills' premises. The trial court granted summary judgment to CTM based on a finding that a party not subject to Hall's levy owned the property at that location. For the reasons which follow, we reverse.

To prevail at summary judgment under OCGA § 9-11-56, CTM, the movant, must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to Hall, warrant judgment as a matter of law. OCGA § 9-11-56 (c). *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Viewed in that light, the record and testimony reflect the following.

Phyllis Ellenburg hired Hall as the office manager for Source International, Ltd. ("Source"). According to Hall, Ellenburg, on behalf of Source, purchased the trade name "British American Antiques" from John Nolan for about $100,000. Hall testified that Source was the corporate entity which did business as British American Antiques ("BAA"). One of Ellenburg's financial backers was R. Price Garner, who later entered into a leasing arrangement with CTM and claimed the inventory at issue.

As Source's office manager, Hall supervised the transfer of Source's antique furniture inventory from Atlanta to units 114 and 115 which Ellenburg leased in her own name and the name of British American Antique Importers, Inc. from Canton Mill/Business Industrial Park, not CTM.[1] Hall claimed she had familiarity with all the antiques because she helped move them. After Ellenburg failed to repay a loan and Source failed to pay her salary, Hall ultimately obtained a default judgment against Source for $39,417.10 plus interest on June 10, 1987.

After Ellenburg filed for personal bankruptcy, the bankruptcy court trustee sent notice to all creditors including "Canton Mill Industrial Business Park" (sic) and Hall of the proposed abandonment by Ellenburg of both the lease and any of her personal property in storage in the leased space. Neither party filed a timely objection to this notice.

Holbrook, leasing agent and property manager for CTM, testified that in or around January 1988, "British American Importers" appar-

---

[1] Canton Mill/Business Industrial Park was owned and operated by Canton Mills Business Industrial Park, a predecessor of Canton Textile Mills, Inc. Canton Textile Mills succeeded Canton Mills Business Industrial Park under the terms of the lease.

ently transferred the inventory to the Garners, and on January 13, 1988, Garner paid $11,850 for the rent arrearage owed on units 114 and 115.

After the purported transfer in ownership of the inventory to Garner, Ellenburg and/or her son on three separate occasions removed property. Also, according to Hall, Lynn Meadows became the new owner of British American Antiques. Meanwhile, believing that the antique furniture in storage was business inventory belonging to Source, and that the inventory was not the personal property of Ellenburg, Hall obtained a court order dated April 28, 1988, for the sheriff to levy on the "goods in storage."

Between June and November, Hall attempted unsuccessfully to have the sheriff's department levy on the inventory. On November 1, 1988, Hall met Deputy Atkinson at CTM to initiate a levy on the inventory. After Deputy Atkinson cut the lock and placed a new lock on units 114 and 115, Hall understood that a sheriff's sale of the inventory would subsequently occur. Ultimately, Hall and Cherokee County reached a $22,500 settlement on Hall's claims for negligent and wrongful levy by the Cherokee County's Sheriff's Department and others.

On November 2, 1988, Corr, a consultant for CTM who was an attorney licensed in Alabama, and familiar with the process of executing on a levy, instructed Holbrook to cut the lock off, despite his knowledge that the sheriff's deputy had been there with Hall and levied on the inventory. The next day Holbrook permitted Garner to remove all the inventory, a process necessitating two or three days and requiring the assistance of several men. When Hall returned to CTM later that month she discovered that all the furniture in storage was gone, apparently transported by Garner to North Carolina allegedly for sale at auction.

Corr testified that he did not know for certain who actually owned the inventory in storage, and also admitted that he met Ellenburg and Garner when Ellenburg brought Garner to CTM to examine the inventory. Corr testified that the company who was renting space was "Source International." Later, after two off-record discussions, Corr attempted to alter his testimony to state that it was BAI, not Source, who was renting the facility. Corr also completed the errata sheet to reflect the correction.

The trial court concluded that Source never maintained a relationship with CTM, that Source was dissolved on April 1, 1988, that Holbrook, Corr and CTM merely acted on behalf of their tenant, Garner. On that basis, the court granted summary judgment. *Held*:

1. Hall contends that Source, doing business as British American Antique Importers, Inc., leased units 114 and 115 from CTM and therefore, maintained a relationship with CTM. CTM claims that

Garner, not Source, owned the property at the time of the attempted levy because Garner purchased it from Ellenburg in exchange for paying the rent arrearage.

Although the lease only mentions Ellenburg and British American Antique Importers, Inc., the identity of the parties named on the lease does not settle the identity of the owner(s) of the inventory. The relationship between Source and British American or British American Antique Importers, Inc. or British American Antiques is murky at best. Whether "British American" was a corporation or merely a trade name used by Source remains unclear. Hall testified that Source and British American were interrelated and that Source did business as British American.

Moreover, the record contains some evidence of a relationship between CTM and Source. Corr testified that CTM was leasing the facility to "Source International" although Corr later attempted to retract this statement during his deposition and afterwards on the errata sheet. The general rule of construing contradictory testimony against a summary judgment respondent is inapplicable here because Corr is the movant. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). Moreover, it is not clear that Corr, an attorney, offered a reasonable explanation for changing important testimony as to the identity of the lessee and possible owner of the inventory at CTM. Because we have previously rejected the proposition that substantive deposition testimony may be erased from the record through the mere substitution of an errata sheet, Corr's corrected errata sheet is insufficient to resolve this material and disputed fact. *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 775 (7) (403 SE2d 235) (1991).

The fact that the Office of the Secretary of State declared that as of April 1, 1988, Source was administratively dissolved would not have prevented an execution and levy against any assets or property that Source owned. See *Gas Pump v. Gen. Cinema Beverages &c.*, 263 Ga. 583 (436 SE2d 207) (1993). Whether Source was the owner of the inventory or had any ownership interest in the inventory is a material issue of fact which remains unresolved.

2. Hall contends that Source owned the inventory at the time of the execution and levy because Ellenburg could not have properly transferred title to it via a letter to Garner.

Due to the conflicting evidence, as we noted in Division 1, the identity of the owner(s) of the inventory is a material issue of disputed fact. After Ellenburg abandoned any interest in any personal property in the storage facility pursuant to her individual bankruptcy, she had no individual interest in the inventory. From that point, it would appear that the inventory was the property of either British American Antiques or Source or their creditors. If the inven-

tory belonged to Source or British American Antiques or British American Antiques, Inc., it is not clear by what authority Ellenburg could effectuate a transfer of ownership to Garner or anyone else. Moreover, a material issue of fact remains as to whether the owner of the inventory was subject to the provisions of the Georgia Bulk Transfer Act, OCGA § 11-6-102 et seq. If the owner of the inventory was subject to the Bulk Transfer Act, and failed to comply with the notice to creditors requirement, OCGA § 11-6-105, then the purported transfer of ownership to Garner was ineffective and the inventory remains subject to creditors' claims.

*Judgment reversed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED MARCH 14, 1996.

*McLain & Merritt, Albert J. Decusati*, for appellant.
*Alston & Bird, Scott A. McLaren, Robb E. Hellwig, W. Scott Mayfield*, for appellees.