A98A0296. SCARBROUGH v. DOVER ELEVATOR COMPANY et al.
(500 SE2d 616)

ELDRIDGE, Judge.

This is an appeal from the Fayette County Superior Court's granting of summary judgment on behalf of Upson County Hospital, Inc., in a personal injury suit instituted by the estate of Margaret Scarbrough after Scarbrough tripped and fell in the hospital's elevator.[1] We reverse.

---

[1] Dover Elevator Company settled prior to trial. Upson County Hospital, d/b/a Upson

On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. In order "[t]o prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, *viewed in the light most favorable to the nonmoving party*, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." (Emphasis supplied.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Gentile v. Bower*, 222 Ga. App. 736 (477 SE2d 130) (1996). "[T]he 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (493 SE2d 403) (1997). With these principles in mind, the facts of record are as follows:

Upson County Hospital operates four elevators. Two of these elevators are located in the middle of the hospital, side by side. At the time of the incident on January 9, 1993, both of these elevators were approximately 30 years old. They were hydraulic elevators with original parts, including the original valves that regulate the floor-leveling process that occurs when an elevator stops.[2] These valves had been obsolete since the 1970s. New parts could not be obtained for rebuilding them. This type of floor-leveling valve needs refurbishing or replacement yearly in order to ensure proper operation of an elevator. These two elevators were identified, when facing them, as: Hydro 2 on the right (#34015) which was the elevator involved in this case; and Hydro 1 on the left (#34016).

In 1992, both elevators had repeated operating problems, requiring "excessive" call-backs by the elevator maintenance people. A frequent problem was with floor level regulation wherein the elevator door would open with the elevator's threshold at a level higher or lower than the floor at which it would stop. In the twelve months preceding the incident, the repair logs on these two elevators show that thirty-two service calls were made, only two of which were simply routine maintenance. Hydro 1 on the left required sixteen repairs, one of which was for leveling problems. Hydro 2 on the right required seventeen repairs, two of which (on June 17, 1992 and December 2, 1992) were for leveling problems.[3]

---

Regional Medical Center, and the Hospital Authority of Upson County are the appellees herein.

[2] The other two elevators were traction elevators. A traction elevator is cable driven, and an hydraulic elevator is driven by hydraulic pistons.

[3] Immediately following appellant's fall, Hydro 2 failed to level properly on March 18, 1993; leveling problems also occurred on December 9, 1994, February 2, 1994, February 10, 1994, July 28, 1994, and August 22, 1994. On July 28, 1994, another visitor to the hospital

Further, it was common knowledge among hospital employees that the hospital's two hydraulic elevators came to an unlevel stop, and these occurrences caused "no surprise" among employees. In the six months immediately preceding the January 1993 incident (June through December 1992), hospital employees had complained about Hydro 2's failure to level on no less than four different occasions.[4] In a December 30, 1992 complaint, just over one week before the January 1993 incident involving appellant, an employee reported that Hydro 2 "stops above the floor." In September 1992, the hospital's elevator maintenance contractor recommended that the hospital replace the hydraulic valves with new, integrated valves for, among other reasons, the "improve[ment] of floor stopping accuracy." However, the hospital refused as long as the elevators were "still working okay."

On January 9, 1993, at approximately 11:00 a.m., 72-year-old Margaret Scarbrough and three relatives arrived at Upson County Hospital to visit a sick cousin. Scarbrough had never been to Upson County Hospital before. The four ladies waited for one of the two middle hydraulic elevators. Hydro 2 arrived. Two hospital employees got off, and the four ladies started to enter the elevator. Scarbrough was in the lead. As Margaret Scarbrough stepped into the elevator, she tripped over a one- to four-inch ledge created when Hydro 2's threshold stopped at a level above the hospital floor. The two hospital employees who had just exited the elevator came to her aid. She was taken to the hospital's emergency room. Scarbrough had broken her arm and her hip in the fall. She was transported to DeKalb Hospital for hip surgery. During surgery, Margaret Scarbrough developed a blood clot and died. *Held*:

"[I]n order to recover for injuries sustained in a slip-[or trip-]and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. *However*, the plaintiff's evidentiary [burden] concerning the second prong is *not* shouldered until the defendant establishes [that] the plaintiff intentionally and unreasonably exposed [herself] to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." (Emphasis supplied.) *Robinson v. Kroger Co.*, supra at 748-749.

Based upon the record, we find that Upson County Hospital knew of Hydro 2's faulty leveling procedures and thus, for purposes of summary judgment, Scarbrough established her cause of action. It

---

fell because the elevator was allegedly unlevel.
 [4] June 23, 1992, June 26, 1992, November 17, 1992, December 30, 1992.

was then up to the hospital on motion for summary judgment to establish that Scarbrough intentionally and unreasonably exposed herself to the danger created by the unlevel elevator, which danger Scarbrough (a) knew existed, or (b) in the exercise of ordinary care should have known existed. *Robinson v. Kroger Co.*, supra.

(a) The trial court determined from the record that Scarbrough actually knew of the dangers presented by Hydro 2's unlevel threshold and, nonetheless, intentionally exposed herself to it. The trial court's determination was based upon (1) the chronology of events contained in an "incident report" filled out by a hospital supervisor who briefly interviewed Scarbrough in the emergency room after her fall and (2) the supervisor's deposition testimony explaining the incident report. In granting summary judgment, the trial court factually concluded that "Ms. Scarbrough told her [the supervisor] that she saw that the elevator floor was 'a little higher than the floor,' and that she stepped forward into the elevator, 'stubbed her toe or something' and fell." We do not agree with the trial court's determination.

That Margaret Scarbrough saw the unlevel elevator threshold *before* her fall is not undisputedly established by the chronology in which the hospital supervisor wrote out the incident report, i.e., that the elevator floor was "a little higher than the floor" and *then* Scarbrough stepped forward into the elevator, stubbing her toe. In fact, the supervisor stated in her deposition testimony that the only words Scarbrough *actually* said to her were the words the supervisor put in quote marks: "a little higher than the floor" and "stubbed her toe or something." The supervisor stated, "[t]he things that are in quotation marks, the patient actually said to me. And the other things are things I wrote." Thus, the chronology upon which the trial court relied was essentially created by the supervisor based upon, as she put it, her "summary or impressions," which she wrote down sometime later, after speaking with Scarbrough. Such "impressions" are based upon the supervisor's interpretation of Scarbrough's *actual* statements: "a little higher than the floor" and "stubbed her toe or something."

However, in a summary judgment setting, only inferences *favorable* to Scarbrough may be drawn; negative inferences are proscribed. *Bruno's Food Stores v. Taylor*, 228 Ga. App. 439 (491 SE2d 881) (1997). Based upon the voluminous record, favorable inferences may be drawn from the two statements Scarbrough actually made to the hospital supervisor: "a little higher than the floor" and "stubbed her toe or something." For example, the supervisor also testified that she *did not ask* Scarbrough whether she saw the threshold was "a little higher than the floor" before, during, or after her fall. Also, the supervisor testified that "she [Scarbrough] saw the elevator was — the elevator floor was a little higher than the floor as she stepped for-

ward." In addition, the supervisor stated in her deposition that "[a]s I recall, she [Scarbrough] told me that she didn't see that it was unlevel."[5] The inferences favorable to Scarbrough are supported by the fact that: (1) no one else, not Scarbrough's three relatives, not even the two hospital employees who exited the elevator, saw the unlevel threshold *before* Scarbrough's fall; (2) one hospital employee's testimony was such that Scarbrough entered the elevator too quickly to have seen the unlevel elevator threshold before her fall; and (3) Scarbrough never told anyone else, other than a hospital supervisor, that she saw the unlevel elevator threshold before her fall.

We find that the evidence of record did not plainly, palpably, and undisputedly establish that, *before* her fall, Scarbrough had actual knowledge of the danger presented by Hydro 2's unlevel threshold.

(b) Scarbrough's failure to see the unlevel elevator threshold before her fall would not entail, as a matter of law, a failure to exercise ordinary care.

With regard to the exercise of ordinary care, an invitee who responds to an owner/occupier's invitation and enters the premises does so pursuant to an implied representation or assurance that the premises have been made ready and safe for the invitee's reception, and the entering invitee is entitled to expect that the owner/occupier has exercised and will continue to exercise reasonable care to make the premises safe. It is in *this light* that an invitee's exercise of ordinary care for personal safety must be examined. *Robinson v. Kroger Co.*, supra. "The established standard is whether, *taking everything into account*, the act is one which the common sense of mankind pronounces [lacks] such prudence as the ordinarily careful person would use in a like situation. The invitee is not bound to avoid hazards not usually present on the premises and which the invitee, exercising ordinary care, did not observe, and the invitee is not required, in all circumstances, to look continuously at the floor, without intermission, for defects in the floor. An invitee is not obliged to inspect the premises to discover latent defects nor even to observe patent defects." (Citations and punctuation omitted; emphasis supplied.) Id. at 741.

We find that Scarbrough's failure to observe the unlevel elevator threshold did not lack such prudence as an ordinarily careful person

---

[5] Following an immediate review of her deposition with the hospital attorney, the supervisor corrected this statement with an errata sheet to "[a]s I recall, she told me 'she saw it was unlevel.' " Eleven months later, the supervisor swore in an affidavit that she had "simply misspoke" when testifying that Scarbrough "didn't see that it was unlevel." "[W]e have previously rejected the proposition that substantive deposition testimony may be erased from the record through the mere substitution of an errata sheet." *Hall v. Holbrook*, 220 Ga. App. 675, 677 (469 SE2d 868) (1996); *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 775 (7) (403 SE2d 235) (1991).

would exercise in a like situation. Scarbrough was under no duty to inspect the elevator threshold for defects before entering, nor could she be expected to observe such an uncustomary and unexpected defect. Contrastingly, Upson County Hospital was under a duty to keep its premises safe, which included either fixing Hydro 2 or clearly warning an invitee of the dangers presented by the elevator's erratic performance. Thus, "taking everything into account" and in "this light" of the *hospital's* duty to exercise ordinary care for an invitee's personal safety, Scarbrough's actions did not reflect a lack of ordinary care for her safety. This Court will no longer "place[ ] in the limelight an invitee's duty to exercise reasonable care for personal safety and, in so doing, [relegate] to the shadows the duty owed by an owner/occupier to an invitee." *Robinson v. Kroger Co.*, supra at 740.

(c) Further, "when an invitee explains that he was not looking at the location of the hazard which caused injury because of something in the control of the owner/occupier, which purported distraction is of such a nature that the defendant might have anticipated that it would divert an invitee's attention, e.g., [operation of an elevator], the invitee has presented some evidence [of the exercise of] reasonable care for the invitee's own safety. *Barentine v. Kroger*, [264 Ga. 224, 225 (443 SE2d 485) (1994)]." (Punctuation omitted.) *Robinson v. Kroger Co.*, supra at 746. To that end, Scarbrough presented testimony from an expert which showed that it is common knowledge in the elevator industry that the threshold of an elevator is the most likely place for injury to occur. The reason for this, according to plaintiff's expert, is that passengers may not notice an uneven floor level at the threshold because of other "distractions" involved: "[P]assengers entering an elevator are confronted with a multitude of events: The opening doors, exiting passengers, other passengers entering along with this passenger, and the constant realization that the doors will close on a timed basis."

Herein, Upson County Hospital might have "anticipated that [Scarbrough's] attention would be diverted" during her entry into Hydro 2, so that the unlevel threshold would not be observed. Accordingly, Scarbrough presented evidence of the exercise of reasonable care for her own safety so as to survive a motion for summary judgment.

In sum, taking into account all of the circumstances existing at the time and place of the fall, Scarbrough "exercised the prudence an ordinarily careful person would use in a like situation." *Robinson v. Kroger Co.*, supra at 735. We conclude that the granting of summary judgment in this case was error.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 30, 1998 —
RECONSIDERATION DENIED APRIL 10, 1998 — 

*Evans & Evans, Larry K. Evans*, for appellant.
*Willis, McKenzie & Long, Edward L. Long, Jr., Drew, Eckl & Farnham, Stevan A. Miller, Julianne Swilley*, for appellees.