## A01A1398. VAUGHAN v. THE STATE.
(553 SE2d 335)

ELDRIDGE, Judge.

A Cobb County jury found Danny James Vaughan guilty of sale of cocaine, which charge arose when Vaughan and two companions sold such drug to undercover narcotics agents outside a boarding house located at 96 Rigby Drive, Marietta. He appeals, challenging (1) the admissibility of testimony from undercover officers regarding the manner in which street-level sellers of narcotics operate, and (2) the admission of Vaughan's prior conviction for possession of cocaine as a similar transaction. After consideration of the errors as enumerated, we affirm.

1. Vaughan first claims error in the trial court's admission of testimony from undercover officers that: (a) marked money used to facilitate undercover sales is recovered only twenty percent of the time, and (b) sellers of narcotics on the street usually operate in three-

---

[13] *Kelly v. State*, 188 Ga. App. 362, 363 (3) (373 SE2d 63) (1988).

person units. We find no error in the admission of this testimony.

(a) Vaughan failed to object to the testimony regarding the percentage of time in which marked funds are recovered after the arrest of street sellers. "Reversal of the trial court is not authorized on the basis of an evidentiary ruling that the trial court was never called upon to make. Likewise, in the absence of a specific objection below, it was waived."[1]

(b) Vaughan objected on the basis of "speculation" to undercover officer T. Rose's testimony about the operation of street dealers in three-person units. Defense counsel contended that Rose only *bought* drugs undercover and that she was not "seasoned as a seller. . . . [S]he has zero experience from that end of the transaction." In response, the prosecutor qualified Rose as an expert in street-level drug transactions.

Thereafter, Rose again attempted to testify that street sellers work in three-person groups, but defense counsel objected again, this time based on relevancy: "I mean, we're dealing with this transaction on this night. . . . It's not relevant." The trial court overruled the relevancy objection. Rose then testified that, from her experience, three people usually work as a unit in street-level drug sales; she identified these people as the runner, who approaches the buyers; the supplier, who holds the drugs; and the money person, who holds the money and who "leaves the scene as soon as the transaction is made, so that if there are any marked funds involved, then they're not found out at all."

Such evidence was relevant because it was descriptive of the pattern of events that transpired in the instant case. Here, the undercover officers approached three men who were together at a known drug sale location. Vaughan was the person who approached the undercover officers' car. After Vaughan took the request for "twenty of hard," the second nearby male, Read, yelled out that "I only have forties." Vaughan then went to Read, who handed him the drugs, which Vaughan in turn handed to the officers. In exchange for the drugs, the officers gave two marked $20 bills to Vaughan. While driving off, the officers called immediately for a take-down team to execute the arrests. Within a minute, Vaughan and Read were arrested at the scene of the sale, while the third man with them was not found; neither were the marked bills, which were not recovered on either Vaughan or Read. Thus, Rose's expert testimony regarding the operations of street-level narcotic sellers as applied to the facts of the instant case led to the reasonable inference that Vaughan was the

---

[1] (Citations and punctuation omitted.) *Terry v. State*, 224 Ga. App. 157, 160 (2) (480 SE2d 193) (1996).

runner; Read was the supplier; and the man who was not arrested was holding the marked money. Such expert testimony about narcotic sales was "beyond the ken" of the average juror and was applicable to the facts of the instant case. "Therefore, the testimony was properly admissible under OCGA § 24-9-67."[2]

2. Evidence of Vaughan's prior 1997 conviction for possession of cocaine was admitted as a similar transaction in this sale case. He challenges this admission.

The 1997 charge arose when, approximately a mile from the location in the instant case, a crack pipe with cocaine residue was found in Vaughan's pocket as a result of a consensual pat-down search. The State argued at the Uniform Superior Court Rule 31.3 (B) hearing that such evidence showed Vaughan's motive for being the runner at 96 Rigby Drive, i.e., that he was a "user" (apparently typified by the crack pipe) who was acting as the middle man in the instant drug sale in order to obtain money to "facilitate a drug use" of his own. Later, the State claimed that the 1997 incident was admissible to demonstrate "identity" with regard to the instant offense.

While possession of drugs can be admissible as a similar transaction in a subsequent prosecution for sale of drugs, the prior possession must be under factually similar circumstances so as to demonstrate a proper purpose for admission, such as identity or motive: "It is the factual similarity of the defendant's possession of drugs on different occasions which renders it admissible . . . and the differing intent with which he may have possessed the drugs on those separate occasions is not a bar to its admissibility for that limited purpose."[3] Here, however, there is absolutely no evidence in the record of Vaughan's "motive" for engaging in the instant sale of cocaine to the undercover officers. On its face, Vaughan's prior possession of a crack pipe three years earlier has no factual connection with the instant sale case so as to demonstrate a motive therefor; the State's argument with regard thereto is pure speculation without a basis in fact. Also, nothing about the facts of the three-year-old similar transaction establish a link or connection between Vaughan's previous possession of a crack pipe and the sale of cocaine in the instant case so as to demonstrate his "identity" as the perpetrator of the sale. Accordingly, we can discern no proper purpose for the admission in this sale case of Vaughan's prior possession of a crack pipe with cocaine residue.

Nonetheless, we will not reverse on this basis. "[T]he erroneous admission of similar transaction evidence may be harmless if there is such overwhelming evidence of the defendant's guilt that it is highly

---

[2] *Davis v. State*, 200 Ga. App. 44, 46 (2) (406 SE2d 555) (1991).
[3] *Faison v. State*, 199 Ga. App. 447, 449 (1) (405 SE2d 277) (1991).

probable that the error did not contribute to the guilty verdict."[4]

In the case before us, the evidence of Vaughan's guilt was indeed overwhelming. After observing him in lit conditions from close range, two undercover officers positively identified Vaughan as the man who approached their car at 96 Rigby Drive and sold them cocaine in exchange for marked funds. Vaughan and one of his companions, Read, were arrested thirty seconds after the sale in precisely the same location, and Read pled guilty to his part in the offense. The physical description the undercover officers gave to the take-down team matched Vaughan, including the fact that he was wearing a red shirt and a black knit cap, which cap was recovered from Vaughan's pocket.[5]

Also, Vaughan did not testify and offered no evidence in defense of the instant charge;[6] instead, he called into question the officers' in-court identification of him, because one officer put in his police report that Vaughan was wearing a red "jacket" on the evening in question, when he was in fact wearing a red shirt.

Finally, the trial court instructed the jury to consider the similar transaction evidence only to the extent that such evidence demonstrated identity or bent of mind with regard to the case on trial, which it clearly, clearly did not since the two incidents were so factually unrelated. "Qualified jurors under oath are presumed to follow the instructions of the trial court."[7]

In light of the overwhelming evidence of Vaughan's guilt, including eyewitness testimony regarding his sale of cocaine to undercover police officers, as well as the lack of a viable defense, we find it highly probable the admission of evidence that Vaughan was in possession of a crack pipe three years prior to the instant prosecution did not contribute to the jury's verdict finding him guilty of selling cocaine to undercover officers.[8]

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 1, 2001 —
RECONSIDERATION DENIED AUGUST 16, 2001.

*David Markus*, for appellant.

---

[4] *Moore v. State*, 242 Ga. App. 249, 250 (1) (a) (529 SE2d 381) (2000).
[5] See *Tanner v. State*, 243 Ga. App. 640, 643 (533 SE2d 794) (2000).
[6] See *Garcia v. State*, 267 Ga. 257, 259 (7) (477 SE2d 112) (1996).
[7] *Gentry v. State*, 212 Ga. App. 79, 83 (4) (441 SE2d 249) (1994).
[8] *Johnson v. State*, 233 Ga. App. 301, 305 (504 SE2d 8) (1998).

*Patrick H. Head, District Attorney, Amelia G. Pray, Samuel W. Lengen, Assistant District Attorneys*, for appellee.