## A03A0463. CROWE v. THE STATE.
### (578 SE2d 134)

ELDRIDGE, Judge.

A Rockdale County jury found Jerry Lewis Crowe guilty of two counts of misdemeanor, second degree vehicular homicide, which charges arose when Crowe backed his flatbed wrecker truck onto Highway 20 in Conyers, striking an oncoming vehicle driven by Lynn Lynch, and resulting in the deaths of two teenagers who were passengers in Lynch's vehicle. Crowe appeals, claiming that the trial court erred in granting the State's motion in limine as to the chemical test results of Lynch's blood and urine; that the court erred in permitting the State to introduce evidence related to Crowe's use of rotational lights on his wrecker; that the trial court erred in admitting as

---

"actual evidence" computerized diagrams recreating the collision and permitting such diagrams to go out with the jury during deliberations; and that the court erred in refusing to charge the jury on the law of accident or misfortune.[1] Upon review of the errors as enumerated, we affirm Crowe's convictions.

1. Pursuant to OCGA § 40-5-55 (a), Lynch submitted to chemical testing of her blood and urine. Crowe's first four enumerations of error challenge the trial court's ruling with regard to the admission of the results of the chemical tests.[2] We find no error.

Lynch's urinalysis revealed unquantified traces of THC metabolites (marijuana), bupropion (Wellbutrin), and hydrocodone (Percocet), which substances were of insufficient quantities to appear in her blood. Blood test results were positive for a trace of butalbitol (Esgic) in a quantity less than the lowest calibrator used by the Georgia Bureau of Investigation Crime Laboratory ("GBI crime lab"); no other substances were detected in Lynch's blood or urine.

Prior to the start of trial, the State made a motion in limine on the basis of relevancy with regard to the results of Lynch's chemical tests. Crowe made argument to the trial court regarding the relevance of the tests as showing Lynch was a less safe driver; however, Crowe was not prepared to put forth factual evidence in support of such argument. The trial court granted the motion in limine until such time as Crowe could put forth evidence that the chemical tests at issue showed Lynch's driving was impaired by the drugs in her system:

> Well, what the Court is going to do is grant the motion in limine at this point. All that means is that before you can introduce the evidence, you are going to have to present evidence before the Court outside the jury's presence, or conduct a hearing on that, and see if you can make sufficient evidence to show that it's relevant.

After jury selection and opening argument, an evidentiary hearing was held outside the presence of the jury. Crowe called as an expert witness Dr. Donald Dicks, a forensic toxicologist with the GBI crime lab who supervised the chemical tests performed on Lynch's blood and urine. Dr. Dicks testified that the substances found solely as a result of the urinalysis were no longer in Lynch's bloodstream so

---

[1] In a supplement to his filings in this Court, Crowe abandoned an additional enumeration of error regarding the replacement of a sitting juror. See Court of Appeals Rule 27 (c) (2).

[2] Each of Crowe's four claims of error varies with regard to the alleged harm resulting from the grant of the State's motion in limine; however, the sole determinative issue is the propriety of such grant.

as to affect her brain and central nervous system, but were found in unquantified amounts in her urine as waste product; he stated unequivocally that the substances detected in Lynch's urine could *not* have affected her driving ability. Dr. Dicks further testified that the butalbitol found in Lynch's blood was a trace amount and that he was "highly doubtful that it would have affected her"; however, he could not "say for certainty that it would not have affected her." Crowe called no other witness to support admission of the chemical tests results and relied solely on evidence adduced from Dr. Dicks.

After hearing this evidence and the arguments of the parties, the trial court granted the State's motion in limine as to the results of Lynch's urinalysis. The court denied the motion as to the results of Lynch's blood test and permitted evidence of the butalbitol found pursuant to such test to go before the jury.

(a) Crowe claims the trial court erred in granting the State's motion in limine as to the results of the chemical test of Lynch's urine. We disagree.

Evidence of a witness' use of drugs is improper character evidence, unless the party who wishes to introduce such evidence shows its relevance to the issues being tried by the jury.[3] Without a showing of relevance, this character evidence would be inadmissible as gratuitously interjecting the witness' drug use simply to prejudice the jury.[4] Citing *Nash v. State*[5] and *Harridge v. State*,[6] Crowe claims relevance because evidence that Lynch used drugs and thus had drug metabolites in her urine might lead a jury to determine that she was a less safe driver at the time of the collision, thereby creating reasonable doubt that Crowe's actions were the sole proximate cause of the victims' deaths; Crowe argues that it was up to a jury to determine whether the substances found in Lynch's urine impaired her driving ability.

It is axiomatic, however, that a jury's determination must have a factual basis. A factual determination of driving ability as revealed through toxicological analysis is "beyond the ken" of the average juror and thus is established through expert testimony.[7] In this case, no facts were established which would permit a jury to conclude that, at the time of the incident, Lynch's driving ability was impaired by the substances found in her urine. Crowe's own expert evidence

---

[3] OCGA § 24-9-84; *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 183 (3) (539 SE2d 873) (2000); *Shropshire v. State*, 210 Ga. App. 241 (435 SE2d 700) (1993).

[4] See, e.g., *Allen v. State*, 275 Ga. 64, 68 (3) (561 SE2d 397) (2002); *Heaton v. State*, 214 Ga. App. 460, 461 (2) (448 SE2d 49) (1994).

[5] 179 Ga. App. 702 (347 SE2d 651) (1986).

[6] 243 Ga. App. 658 (534 SE2d 113) (2000).

[7] See, e.g., *Vaughan v. State*, 251 Ga. App. 221, 223 (553 SE2d 335) (2001); *Smith v. State*, 247 Ga. 612, 617 (277 SE2d 678) (1981).

showed the contrary, i.e., that the drugs detected by the urinalysis did not affect Lynch's driving ability.

Our decisions in both *Nash v. State*, supra, and *Harridge v. State*, supra, upon which Crowe relies, are clearly distinguishable. In *Nash*, test results of the victim's blood, not urine, showed the presence of marijuana metabolites, and an expert witness testified that such substance *could* affect perceptions while driving; in *Harridge*, a *Brady*[8] violation case, marijuana was detected in the victim's blood and urine, and the State failed to turn such information over to the defense, thereby *precluding the possibility* that Harridge could obtain favorable expert testimony as to the victim's impairment.

Here, in contrast to *Harridge*, chemical test results were turned over to the defense, and Crowe obtained expert testimony thereon (albeit such testimony was unfavorable to his cause). And, contrary to *Nash*, Crowe's expert testified that the drug metabolites found in Lynch's urine would *not* have affected her ability to drive; that the substances were found in Lynch's urine only, not in her blood, and thus were out of her central nervous system. In this case, without any factual basis upon which a jury could conclude Lynch was a less safe driver at the time of the collision, the trial court did not err in finding that Crowe failed to demonstrate the relevance of Lynch's urinalysis to the issue of the proximate cause of the victims' deaths so as to permit the jury to hear otherwise inadmissible character evidence.

(b) Crowe also claims that he was improperly restricted during voir dire and opening argument by the trial court's initial, temporary granting of the motion in limine as to the results of the chemical test on Lynch's blood, since ultimately the court permitted introduction of such results. This contention is meritless. The trial court's initial grant of the motion in limine was based upon Crowe's failure to present factual, evidentiary support for his relevancy arguments; instead, Crowe chose to rely solely upon case law:

> [Court:] Do you have any evidence, Mr. Strauss, at all, that will tie these drugs or a combination of these drugs to any impairment on the part of the driver of the victims' vehicle? [Defense:] Judge, not at this time because of reliance upon these cases, I didn't think it would be necessary for me to demonstrate the impairment.

"One cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing."[9]

---

[8] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[9] (Citation and punctuation omitted.) *Payne v. State*, 273 Ga. 317, 319 (5) (540 SE2d 191) (2001).

(c) Crowe also contends the trial court improperly restricted his examination of Dr. Dicks when the court sustained the State's objection to his attempts to establish through a hypothetical question the time period during which Lynch might have been impaired by smoking marijuana, the metabolites of which were detected in Lynch's urine. This contention is without merit.

The disputed hypothetical question, interrupted by objection, was, "If she [(Lynch)] were to get up on the stand and admit that she smoked three hours before this collision —." In that regard, "If an expert testifies by hypothetical question, the assumed facts must be placed in evidence by testimony or other legal means."[10] In this case, no factual basis was ever presented — or even asserted — for Crowe's hypothetical question. Absent any factual basis, the trial court properly sustained objection to Crowe's hypothetical question.

(d) At the evidentiary hearing, Crowe never called Lynch to ask when she ingested the substances detected by the urinalysis in order to establish either a factual basis for the hypothetical question he wanted to ask Dr. Dicks or the relevancy of the time frame in which such substances were ingested in relation to the collision.[11] Accordingly, there is no factual basis for Crowe's suppositional arguments that "there *may* have been within Ms. Lynch's bloodstream, and hence impairing her, marijuana as late as four hours prior to her samples being taken, which would be one-hour prior to the collision at issue." (Emphasis supplied.) Clearly, "none of the [arguments] about the effect of marijuana on driving skills was [factually] specific to this case."[12]

2. Crowe next claims error in the admission of State's Exhibit 42, a photograph of an expired decal on the windshield of Crowe's wrecker truck which permitted his use of emergency rotational lights; he contends that such evidence improperly put his character into evidence as proscribed by OCGA § 24-9-84, presumably because the decal was expired. We disagree.

We are not persuaded that possession of an expired emergency light decal is proof of "bad character" as contemplated by the provisions of OCGA § 24-9-84. However, even if Crowe's character was somehow impacted, there was conflicting evidence as to whether, at the time of the collision, Crowe's rotational lights were actually being used. Crowe stated they had been activated; other witnesses stated they had not. The expired decal authorizing the use of the wrecker's emergency rotational lights was relevant as going to the likelihood of

---

[10] (Citation omitted.) *Leonard v. State*, 269 Ga. 867, 871 (3) (506 SE2d 853) (1998).

[11] Crowe only sought to cross-examine Lynch before the jury about drug use, which was properly prohibited by the trial court absent a showing of relevancy.

[12] *R. A. Siegel Co. v. Bowen*, supra at 183.

Crowe's pre-collision activation of those lights, as he claimed. Thus, the evidence was admissible for whatever weight the jury wished to give it in resolving conflicts in the evidence. "Relevant information is not rendered inadmissible because it may incidentally place a defendant's character in issue."[13]

3. We likewise find no error in the trial court's admission into evidence of six computer-generated diagrams recreating the collision, which were used as demonstrative evidence in this case. Crowe had no objection to the admission of five of the complained-of exhibits. All of the exhibits were duly authenticated by Deputy R. Codero with the Rockdale County Sheriff's Department and used to illustrate his testimony. Further, Crowe identifies no material discrepancies or the omission of any material information in the exhibits.

> [D]emonstrative evidence is to be received into evidence and go out with the jury during deliberations. In this case, the [diagrams] served to illustrate the testimony of the [officer], who authenticated the accuracy of the illustration. Thus, the [diagrams were] admissible demonstrative evidence and the trial court did not err in allowing it to go to the jury room.[14]

4. Finally, Crowe contends the trial court erred in refusing to give his request to charge on the defense of accident or misfortune. We find no error. The defense of "accident" is an affirmative defense that requires an admission of the prohibited act, but seeks to justify, excuse, or mitigate its commission due to accidental circumstances.[15] During trial, Crowe claimed that he did not back into the highway and strike the victims' vehicle; that the collision was caused by Lynch's conduct. Accordingly, Crowe did not defend on the basis of accident or misfortune, and such charge was not authorized. Further, and contrary to Crowe's argument, "accident" or "misfortune" would be defenses related to *Crowe's* conduct, not Lynch's conduct; absent evidence that Crowe did anything by accident, a charge thereon was not required.[16]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[13] (Citation and punctuation omitted.) *Turner v. State*, 241 Ga. App. 431, 436 (5) (526 SE2d 95) (1999).

[14] (Citations and punctuation omitted.) *Moss v. State*, 274 Ga. 740, 742 (2) (559 SE2d 433) (2002); *Gabbard v. State*, 233 Ga. App. 122, 124 (3) (503 SE2d 347) (1998).

[15] *Savage v. State*, 252 Ga. App. 251, 254 (556 SE2d 176) (2001).

[16] *Sampson v. State*, 165 Ga. App. 833, 834 (4) (303 SE2d 77) (1983).

DECIDED FEBRUARY 6, 2003 —
RECONSIDERATION DENIED FEBRUARY 20, 2003 —

*John L. Strauss*, for appellant.
*Richard R. Read, Solicitor-General, Roberta A. Earnhardt, Assistant Solicitor-General*, for appellee.