## A08A0523. PIHLMAN v. THE STATE.
### (664 SE2d 904)

BARNES, Chief Judge.

Following the denial of his motion for new trial, Lawrence Walter Pihlman appeals his conviction for trafficking in cocaine and 30-year sentence. He contends that his conviction must be reversed because the State failed to reveal the deal it made with one of Pihlman's co-defendants in exchange for her substantial assistance, the trial court erred in allowing the co-defendant's attorney to invoke the attorney-client privilege during her testimony at the hearing on the motion for new trial, and that trial counsel was ineffective. Upon review, we affirm.

Construed in favor of the jury's verdict, the evidence shows that Shawn O'Connor sold cocaine for Jennifer Kautz to support his cocaine habit. One of his regular customers, J. J., was an undercover investigator with the Gwinnett County Drug Task Force. In May 2001, O'Connor and J. J. agreed on a drug sale for four ounces of cocaine that was to take place at an apartment complex in Norcross. The apartment was listed in Jennifer Kautz's name. On the day of the sale, J. J. and his partner drove O'Connor to the apartment. Other officers were surveiling the apartment complex. When J. J. insisted on seeing the cocaine before he paid O'Connor, O'Connor talked with someone in the apartment, told J. J. that the transaction would take place in the downstairs apartment, and assured him that the cocaine was in the apartment. Based on this information, the officer arrested O'Connor and entered the apartment with a search warrant.

When officers entered the apartment, they kicked in a locked bathroom door and found Pihlman inside standing near the toilet and sink wearing a surgical mask around his neck. Another man, Wesley Carson, was standing in the shower fully clothed with the water running. One officer testified that there was a white haze in the air when they entered the bathroom. Police discovered a large quantity of cocaine, baggies, a scale, and other drug paraphernalia in the apartment.

Pihlman, Carson, and Kautz were indicted for trafficking in more than 200 grams of cocaine. Pihlman and Kautz were also indicted for possession of less than one ounce of marijuana. Pihlman was tried jointly with Carson, and O'Connor and Kautz testified as State's witnesses. Following the trial, Carson was convicted of the lesser included offense of cocaine possession. Pihlman was convicted

of trafficking and sentenced to 30 years to serve 20 in confinement. Kautz subsequently entered a guilty plea to the lesser included offense of sale of cocaine and possession of less than one ounce of marijuana. She was sentenced to ten years to serve five, with a concurrent twelve-month sentence on the possession conviction.

1. Pihlman first contends that his conviction must be reversed because the State did not reveal the deal it made with Kautz in exchange for her substantial assistance during Pihlman's trial. He argues that, although Kautz testified that she had never been told that her substantial assistance in Pihlman's trial could reduce her sentence, "the only reason that Ms. Kautz testified against [Pihlman] and Mr. Carson was to escape the mandatory minimum sentencing provisions of the trafficking statute." He further argues that "the deal the State made with Ms. Kautz was that her substantial assistance would be taken into account when she was eventually sentenced." Pihlman asserts that "[i]t is simply unbelievable that at no time during these discussions with her attorney did Ms. Kautz ever ask if there was any way she could receive a lesser sentence and her attorney never advised her of this fact."

During trial, Kautz was cross-examined about any deal she might have.

Q: And you want us to believe that in all your conversations, either with [your attorney] or with the DA, the issue of "substantial assistance" has not come up?

Kautz: Has not come up, no.

Q: Has not come up. And nobody has told you that the DA can move the Court and tell the Court that you have substantially assisted in the prosecution of this case and get you out from under those mandatory-minimum sentences?

Kautz: Nobody has promised me anything.

Q: I didn't ask that, ma'am.

Kautz: Then I don't understand.

Q: Nobody has discussed with you — not your attorney, not anybody in the DA's office — has told you that the DA can petition the Court and tell the Court that you have substantially assisted them in the prosecution of this case, to get you out from under those mandatory minimums?

Kautz: Correct.

Q: So you're telling this jury that you fully intend to enter a plea of guilty in this case?

Kautz: Yes.

Q: And do 15 years in jail?

Kautz: Yes.

Q: And a $300,000 fine?
Kautz: Yes.

As noted earlier, Kautz later entered a nonnegotiated guilty plea to sale of cocaine, not trafficking, and possession of less than one ounce of marijuana, and received a sentence of ten years to serve five and a concurrent twelve-month sentence on the possession conviction. At the motion for new trial, Kautz's attorney testified, "I can say a hundred percent, there was no deal. There was [sic] no conversations. There was not a wink and nod."

Pursuant to OCGA § 16-13-31 (a) (1) (B), where, as here, "the quantity of the cocaine or the mixture involved is 200 grams or more, but less than 400 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of 15 years and shall pay a fine of $300,000.00." OCGA § 16-13-31 (g) (1) provides that this sentence must be served in prison, except as provided in OCGA § 16-13-31 (g) (2). Under OCGA § 16-13-31 (g) (2) the trial court may impose a "reduced or suspended sentence" upon its finding that the defendant has provided "substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, coconspirators, or principals." See *Lastohkein v. State*, 199 Ga. App. 555, 556 (2) (405 SE2d 554) (1991).

Pihlman correctly asserts that under *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972),

[t]he State is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

(Citations and punctuation omitted.) *Jolley v. State*, 254 Ga. 624, 629 (5) (331 SE2d 516) (1985).

In order to show that the State violated *Brady* by failing to reveal a deal with one of its witnesses, a defendant must show that the State possessed evidence of the deal; that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; that the State suppressed evidence of the deal; and that, had the evidence of the deal been disclosed to the defendant, there existed a reasonable probability that the result at trial would have been different. The burden is on the defendant to prove each of these elements.

(Citations and punctuation omitted.) *Ragland v. State*, 238 Ga. App. 664, 665 (519 SE2d 757) (1999).

Pihlman has not met this standard. He presents no evidence that there was a deal, but merely argues that there must have been one because of Kautz's sentence. Here, incredulity is not evidence of a deal. In fact, all of the evidence showed there was no deal. The trial court said at the motion for new trial hearing that Kautz entered a nonnegotiated plea and that there was no deal between her and the prosecution; it also noted that Kautz's sentence did not include customary language indicating that her plea was made in exchange for her truthful testimony. Kautz's lawyer, as discussed earlier, testified that there was no deal, and also testified that her argument at sentencing was that Kautz had been truthful about the situation all along and that she had been abused and under duress during her relationship with Pihlman. Further, the prosecutor argued at the new trial hearing that the standard practice of the district attorney's office was that

> when you have someone who cooperates with the State and offers testimony for the State against a co-defendant, that at the end, when the testifying co-defendant is sentenced, that is considered to whatever extent that the judge wants to consider it. And that is, in fact, borne out by what happened with Ms. Kautz. She was, in fact, given a lesser-included offense. That was because of her assistance, but that was never promised to her ahead of time.

Finally, Kautz did not "escape the mandatory minimum" under OCGA § 16-13-31 (a) because she did not plead guilty to trafficking. She pled guilty to selling cocaine. The trial court did not err in denying the new trial motion.

2. Pihlman next argues that the trial court erred by allowing Kautz's attorney to invoke the attorney-client privilege at the motion for new trial hearing concerning whether she had discussed "substantial assistance" with Kautz. Pihlman argues that the attorney-client privilege cannot be used to assist Kautz in committing perjury.

"Under the common law of Georgia, as codified in [OCGA] §§ 24-9-21 (2), 24-9-24, and 24-9-25, the attorney-client privilege bars revelation, discovery, and *testimony* of a lawyer except when waived by the client or in very limited circumstances." (Punctuation omitted.) *Avery v. State*, 244 Ga. App. 177, 182 (4) (534 SE2d 897) (2000). "[T]he attorney-client privilege[, however,] does not cover communications with respect to proposed or ongoing infractions of the law in the commission of a crime, or the perpetration of a fraud."

(Citations omitted.) *Both v. Frantz*, 278 Ga. App. 556, 563 (5) (629 SE2d 427) (2006). "Communications occurring after a fraud or a crime has been completed are privileged, but those which occur before the perpetration of a fraud or commission of a crime and which relate thereto are not protected by the privilege." Id. at 563-564. See *McKie v. State*, 165 Ga. 210 (3) (140 SE 625) (1927) (defendant in a homicide prosecution wrote letters to an attorney requesting his employment in another matter; the Supreme Court held: "Communications between client and attorney are excluded from public policy, and are incompetent as evidence against the client upon her trial for the homicide of her husband; and this is so whether such letters were voluntarily produced by the attorney to be used against the client, or were surreptitiously or otherwise taken from the possession of the attorney.").

Here, the testimony that Pihlman sought from Kautz's lawyer clearly falls within the attorney-client privilege because there was no evidence of any fraud or crime. Although Pihlman insists that Kautz committed perjury when she testified that her attorney did not discuss "substantial assistance" with her, Pihlman's arguments are merely speculative. As noted by the State, Kautz was cross-examined extensively about any deal she might have had with the State and whether she was aware of the benefits of "substantial assistance," and the jury was able to assess her credibility and believability.

3. Pihlman next contends that the trial court erred in denying his motion for new trial on the basis of ineffective assistance of counsel. We disagree.

> Generally, the burden is on the defendant claiming ineffectiveness of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Citation and punctuation omitted.) *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995). Failure to satisfy either prong of this test is fatal to an ineffective assistance claim, and we need not address the deficient performance prong if the showing on the prejudice prong is insufficient. See *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997).

(a) Pihlman first argues that trial counsel was ineffective in failing to let him testify at trial. At the motion for new trial hearing,

Pihlman's trial counsel testified that based on Pihlman's defense that he was merely present in the bathroom, and unaware of the drugs, when counsel received tapes on which Pihlman stated that he was dealing drugs to support his parents, counsel advised Pihlman not to testify so that he could not be cross-examined about the tapes. Pihlman's trial counsel also testified that Pihlman was made aware of his right to testify and it was his decision not to do so.

Pihlman has failed to satisfy the first prong of the *Strickland* test, since he has not shown that his trial counsel's performance was deficient with respect to exercising his constitutional right not to testify. See *Coggins v. State*, 275 Ga. 479, 482 (3) (569 SE2d 505) (2002). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

(b) Pihlman next contends that trial counsel was ineffective for failing to request a charge on false swearing. Under OCGA § 24-9-85 (b), "[i]f a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." As noted previously, there is no evidence that Kautz knowingly and wilfully testified falsely. Accordingly, trial counsel was not deficient for failing to request a charge on the principles contained in OCGA § 24-9-85 (b).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 9, 2008 — 

*Lenzer & Lenzer, Thomas P. Lenzer, Robert W. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Dawn H. Taylor, Assistant District Attorney*, for appellee.