A09A1433, A09A1461. WILLIAMSON v. THE STATE (two cases).
(685 SE2d 784)

PHIPPS, Judge.

Marlene and Cecil Williamson were convicted of offenses stemming from an undercover drug operation that resulted in indict-

---

ments against six people. In Case No. A09A1433, Marlene Williamson claims that the evidence was insufficient to support her convictions, the trial court erred by admitting similar transaction evidence, and her trial counsel was ineffective. She also asserts several claims related to a co-indictee's withdrawal of his guilty plea and plea to a lesser offense after he testified against her at trial and informed the jury of his original plea. Finding no merit in these claims, we affirm Marlene's convictions. In Case No. A09A1461, Cecil Williamson claims that the evidence was insufficient to support his conviction and that the trial court erred in its charge to the jury. Finding harmful error in the court's jury charge, we reverse Cecil's conviction. Because the evidence was sufficient to support Cecil's conviction, he can be retried.[1]

The evidence showed that, on October 3, 2005, an undercover Gwinnett County drug task force agent met Jerry Weeks, who agreed to sell him an ounce of methamphetamine. The agent met Weeks at a convenience store. Marlene Williamson was outside the store at the time. After the agent showed Weeks that he had the money for the purchase, Weeks left to obtain the drugs, and Marlene followed in her car. Minutes later, Weeks returned as a passenger in Marlene's car and sold the agent less than one ounce of methamphetamine. After the exchange, which occurred in the agent's truck, Weeks and Marlene left together.

On October 14, the agent met Weeks at the same convenience store to purchase more methamphetamine. Weeks did not have the drugs with him and suggested that the agent ride with him to meet his "auntie." They drove to another location where Marlene was sitting in her car in the parking lot. After conferring with Marlene, Weeks informed the agent that he might not be able to get a full ounce of methamphetamine but could obtain a lesser amount. Weeks then drove the agent to the home of Marlene and Cecil Williamson, and Marlene followed. Weeks and Marlene went into the house, and the agent waited in Weeks's car. While he was waiting, Cecil Williamson, Marlene's husband, came out of the house, looked around, and went back inside. A few minutes later, a car stopped in front of the house and two men got out and went inside. One of the men had something in his hand. Shortly thereafter, Weeks emerged from the house, informing the agent that he could now obtain a full ounce because "his buddy just showed up." Weeks sold the agent less than one ounce of methamphetamine.

Following that sale, the agent arranged to purchase a larger amount of methamphetamine from Weeks. He also obtained a search

[1] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

warrant for the Williamson house. The last sale occurred on October 26. The agent met Weeks at the same convenience store and followed him to the Williamson house. Weeks went inside and returned with slightly more than 111 grams of a substance that tested positive for methamphetamine, which the agent purchased for $3,400. As the agent was leaving, he saw David Florida, another co-indictee, leave the house and get into a car. The agent then gave the order to execute the search warrant and to stop Florida's car.

During the search, agents found $3,000 of the purchase money in Florida's possession. Weeks had the remaining $400. Agents located a security camera with night vision mounted on the front of the house. In the downstairs master bedroom, agents found a bag containing less than one gram of a substance that tested positive for methamphetamine, a radio frequency scanner able to scan police radio broadcasts, a monitor for the security camera mounted on the front of the house and a small digital scale, which one of the agents testified is of a type commonly used in the drug industry. Agents found a loaded nine millimeter pistol in the downstairs living room. Weeks and both Williamsons were in that room; Cecil was within a few feet of the gun. Another officer searched Marlene's pockets and found a clear bag containing a substance that tested positive for methamphetamine and $263 in cash.

Florida testified that on October 26, he went to the Williamson house, where Marlene let him in and led him to the downstairs master bedroom. Weeks arrived a few minutes later with $3,000, which he handed to Marlene. Florida gave her 111 grams of methamphetamine in exchange for the money. He did not see Cecil while he was there.

Weeks testified about all three sales to the agent. On October 3, he obtained the methamphetamine from Marlene and sold it to the agent. On October 14, he met the agent and took him back to the Williamson house. When they arrived, Cecil was standing on the front porch. Marlene and Weeks went inside, and two men arrived and went with Marlene into the downstairs master bedroom. When the men left, Marlene gave him the methamphetamine for the agent. On October 26, Weeks went to the Williamson house and was talking to Marlene when Florida arrived. They all went downstairs, and Marlene gave Weeks the methamphetamine, which he sold to the agent for $3,400. Florida got $3,000, and Marlene asked Weeks to hold the $400. Weeks understood that Marlene would give him free methamphetamine for his involvement in the deal.

*Case No. A09A1433*

1. Marlene was convicted of trafficking in methamphetamine and possession of methamphetamine, related to the October 26 sale,

and sale of methamphetamine, related to the October 3 sale. She claims that the evidence was insufficient to support any of her convictions.

On appeal from a criminal conviction,

> we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

The felony offense of trafficking in methamphetamine occurs when any person knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine or any mixture containing methamphetamine.[3] And it is unlawful for any person to possess or have under her control or to sell any controlled substance, including methamphetamine.[4] Testimony from the drug task force agent, Florida and Weeks, as well as the physical evidence found on Marlene and in her bedroom, provided sufficient evidence for a rational trier of fact to find Marlene guilty of the charged offenses beyond a reasonable doubt.

2. Marlene challenges the admission of similar transaction evidence.

Before any evidence of independent offenses may be admitted, the trial court must conduct the hearing required by Uniform Superior Court Rule 31.3 (B) and the state must show: (1) that it seeks to introduce the evidence not to raise an improper inference as to the defendant's character but for some proper purpose; (2) that there is sufficient evidence to establish that the defendant committed the independent offense; and (3) that there is a sufficient connection or similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.[5]

(a) The trial court conducted the required pre-trial hearing before admitting the similar transaction evidence, and Marlene's counsel objected to the evidence at that time. At trial, however, Marlene's counsel failed to object to the introduction of the similar transaction evidence. Under these circumstances, we are forced to

---

[2] *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006) (citations omitted).
[3] OCGA § 16-13-31 (e).
[4] OCGA §§ 16-13-30 (a), (b); 16-13-26 (3) (B).
[5] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

conclude that Marlene has waived her right to raise this issue on appeal.[6]

(b) Because the failure to object at trial to the similar transaction evidence is the basis for Marlene's ineffective assistance claim,[7] we nonetheless address the admissibility of the similar transaction evidence.

At trial, before the similar transaction evidence was admitted and again during its jury charge, the court instructed the jury that the evidence could be considered for the limited purpose of showing, if it did, bent of mind or course of conduct of the defendant in the crimes charged in the case on trial. The challenged evidence came from a former Gwinnett County police officer, who testified that in November 2003, he observed a truck make a sudden lane change without a signal and determined that its license plate was registered to a different vehicle. Cecil Williamson was driving the truck, and his wife Marlene was a passenger. The officer stopped the truck and asked the Williamsons whether it contained any weapons. Cecil responded that a gun was inside, and the officer asked them to exit the truck. When Marlene asked if she could have a book from her purse, which was located in the passenger-side floorboard, the officer took the purse and told her he needed to check it first. At that point, she tried to grab the purse from his hand. The officer searched the purse and found two small plastic bags containing a white crystalline substance, which appeared to be methamphetamine. Both Williamsons were arrested for methamphetamine possession.[8] After *Miranda* rights were read to her, Marlene told the officer she believed the bags contained "ice," which the officer testified was street slang for methamphetamine.

We review the trial court's determination that the similar transaction evidence was admissible under an abuse of discretion standard.[9] "Independent crimes are admissible to show motive, intent, plan, identity, bent of mind or course of conduct."[10] Thus, the purposes for which the state sought to introduce the similar transaction were proper. The officer's testimony provided sufficient evidence to establish that Marlene committed the prior offense. Further, the trial court did not abuse its discretion in determining that the offenses were sufficiently similar. The prior possession charge

---

[6] *Young v. State*, 269 Ga. 478, 479 (3) (499 SE2d 60) (1998); *Johnson v. State*, 276 Ga. App. 505, 508 (3) (a) (623 SE2d 706) (2005).

[7] See Division 3, infra.

[8] The charge against Cecil was later nol prossed.

[9] *Mangham v. State*, 234 Ga. App. 567, 569 (1) (507 SE2d 806) (1998).

[10] *Jones v. State*, 236 Ga. App. 330, 332 (1) (b) (511 SE2d 883) (1999) (citation and punctuation omitted).

and the current possession charge both involved the possession of methamphetamine in a plastic bag Marlene kept on or near her person. While there are differences between the two offenses, the proper focus is on the similarities, not the differences, between them.[11] The cases cited by Marlene to show lack of similarity are distinguishable.[12] We conclude that the trial court did not abuse its discretion in admitting the similar transaction evidence.[13]

3. Marlene claims that her trial counsel was ineffective for failing to object at trial to the introduction of the similar transaction evidence.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[14] There are two components to this inquiry:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.[15]

When reviewing a trial court's ruling on trial counsel's effectiveness, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply

---

[11] *Nashid v. State*, 271 Ga. App. 202, 205 (1) (609 SE2d 106) (2004); see also *Nesbitt v. State*, 215 Ga. App. 271, 272 (1) (450 SE2d 310) (1994) (fact that one possession of cocaine incident involved traffic stop and the other did not is not determinative; it is not necessary that the two incidents be twins in all respects).

[12] See *Vaughan v. State*, 251 Ga. App. 221, 223 (2) (553 SE2d 335) (2001) (prior conviction for cocaine possession based on possession of crack pipe with cocaine residue not admissible to show motive and identity in subsequent case involving cocaine sale); *King v. State*, 230 Ga. App. 301, 302-304 (1) (496 SE2d 312) (1998) (ten-year-old conviction for methamphetamine sale not admissible as similar transaction in case involving possession of methamphetamine in bodily fluids where defendant claimed drug was put in his coffee without his knowledge or consent).

[13] See *Stephens v. State*, 208 Ga. App. 291, 292 (1) (430 SE2d 29) (1993) (prior guilty plea to cocaine possession admissible in case involving cocaine trafficking and possession of cocaine with intent to distribute).

[14] *Strickland v. Washington*, 466 U. S. 668, 686 (II) (104 SC 2052, 80 LE2d 674) (1984).

[15] Id. at 687 (III).

the legal principles to the facts."[16]

As we held in Division 2, the admission of the similar transaction evidence was proper. Trial counsel's failure to pursue a futile objection to the admission of this evidence does not constitute deficient performance.[17]

4. Marlene makes several claims related to Weeks's guilty pleas. Before Weeks testified at the Williamsons' trial, he entered a nonnegotiated guilty plea to trafficking in methamphetamine and two counts of selling methamphetamine. At the plea hearing, the state made no recommendations as to sentence, and Weeks acknowledged that he faced a maximum term of 90 years in confinement. The trial court accepted the plea and deferred sentencing. After Weeks testified at the Williamsons' trial, the court allowed him to withdraw his plea to trafficking in methamphetamine and instead plead guilty to possession of methamphetamine with intent to distribute. Based on the state's recommendation, the court sentenced him to 20 years, 11 in confinement.

As a result of these events, Marlene contends that (a) she was denied her constitutional right to cross-examine Weeks regarding his ultimate plea; (b) she did not receive a fair trial because of the state's actions in failing to reveal its deal with Weeks; and (c) she was entitled to a new trial based on the newly discovered evidence of Weeks's ultimate plea. The trial court denied her motion for new trial on these grounds.

(a) *Confrontation clause claim.* The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This guarantee applies to both federal and state criminal defendants.[18] Implicit in the constitutional right of confrontation is the right of cross-examination, which is an essential and fundamental requirement for a fair trial.[19]

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."[20] Because the exposure of a witness's motivation in testifying is an important function of the right of cross-examination, the potential bias or partiality of a witness may always be explored at trial.[21] "It is especially important in a case where a witness or an accomplice may

---

[16] *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (citation omitted).

[17] *McGuire v. State*, 266 Ga. App. 673, 678 (4) (a) (598 SE2d 55) (2004).

[18] *Pointer v. Texas*, 380 U. S. 400, 406 (I) (85 SC 1065, 13 LE2d 923) (1965).

[19] *Chambers v. Mississippi*, 410 U. S. 284, 295 (III) (A) (93 SC 1038, 35 LE2d 297) (1973).

[20] *Davis v. Alaska*, 415 U. S. 308, 316 (2) (94 SC 1105, 39 LE2d 347) (1974).

[21] Id.

have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness."[22]

Thus, defense counsel was entitled to a reasonable cross-examination on the relevant issue of whether Weeks entertained any belief of personal benefit from testifying favorably for the prosecution.[23] Weeks testified at trial that he had been incarcerated since October 27, had pled guilty to all three charges, and understood that the sentencing range for trafficking was ten to thirty years confinement.[24] He stated that he had not yet been sentenced, and the state had not promised him any sentence recommendation. During cross-examination, Weeks acknowledged that he could be facing as much as 90 years confinement and admitted that he was cooperating with the state by testifying "for them." When asked whether he hoped to receive some benefit from his testimony, Weeks responded, "I hope it's going to help me." The trial court did not limit defense counsel's questioning on this issue. Thus, Marlene was not denied her right to explore Weeks's potential bias or partiality.

(b) *Due process claim*. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[25] "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule."[26] Accordingly, the state has a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness.[27]

To prove that the state violated *Brady v. Maryland* by failing to reveal a deal with one of its witnesses, a defendant must show

> that the State possessed evidence of the deal; that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; that the State suppressed evidence of the deal; and that, had the evidence of the deal been disclosed to the defendant, there existed a

---

[22] *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982) (citation and punctuation omitted).

[23] See *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002).

[24] See OCGA § 16-13-31 (e), (h).

[25] *Brady v. Maryland*, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963).

[26] *Giglio v. United States*, 405 U. S. 150, 154 (92 SC 763, 31 LE2d 104) (1972) (citation and punctuation omitted).

[27] *Ragland v. State*, 238 Ga. App. 664, 665 (519 SE2d 757) (1999).

reasonable probability that the result at trial would have been different.[28]

Marlene has not met this standard because she has failed to show that, at the time he testified, there was a deal with Weeks concerning the charges pending against him.[29] At Weeks's sentencing hearing, which occurred two months after the trial, Weeks's counsel stated that no sentencing recommendation had been made to him when Weeks entered his original plea. The prosecutor stated that he had not negotiated with Weeks's counsel between the time of Weeks's original plea and approximately one week before the sentencing hearing when Weeks's counsel asked if Weeks could plead guilty to possession of methamphetamine with intent to distribute instead of trafficking, and the prosecutor agreed. The trial court did not err in denying the motion for new trial on Marlene's claim that she was denied due process.[30]

(c) *Newly discovered evidence claim.* A party seeking a new trial on the basis of newly discovered evidence must satisfy the court that (1) the evidence has come to his or her attention since the trial; (2) it was not the result of a lack of due diligence that he or she did not acquire it sooner; (3) it is so material that it would probably produce a different verdict; (4) it is not cumulative only; (5) the motion is supported by an affidavit of the witness or its absence has been accounted for and (6) the effect of the evidence is not only to impeach the credit of a witness.[31] To secure a new trial, all six requirements must be met.[32]

Marlene cannot meet this standard. The only effect of the evidence regarding Weeks's ultimate plea and sentence would be to impeach Weeks's credibility. Thus, it was not sufficient to support the grant of a new trial.[33]

## Case No. A09A1461

5. Although Cecil Williamson was indicted for trafficking in methamphetamine and possession of a firearm during the commission of a felony, he was convicted of conspiracy to commit trafficking in methamphetamine. He argues that the evidence does not show that he was a participant in any conspiracy to traffic in methamphetamine.

---

[28] Id. (citations omitted).
[29] See *Pihlman v. State*, 292 Ga. App. 612, 615 (1) (664 SE2d 904) (2008).
[30] See id.
[31] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).
[32] Id.
[33] See *Moore v. State*, 268 Ga. 420, 422 (2) (489 SE2d 842) (1997).

The evidence relating specifically to Cecil came from the agent and Weeks. They both testified that they briefly saw Cecil on the front porch of his house on October 14. The agent also testified that he interviewed Cecil at the house after the search warrant had been executed. Cecil admitted that he owned the pistol found in the search, but told the agent that he did not get involved in the drug-related activities occurring in the house. Cecil said, "I don't see because I don't want to," but admitted that he knew about the drug activity in the house. He stated that he was retired and that he merely wanted his family to be safe, and he wanted to be safe.

Weeks testified that he was in the downstairs living room when police officers arrived on October 26. Cecil was also there and had a gun tucked in the back of his pants. When the officers arrived, Cecil put the gun on the floor, behind the computer. Cecil told Weeks that Weeks had made a big mistake and that "them Mexicans are going to get you," possibly referring to Florida, who is Hispanic. Weeks testified that Cecil and Marlene shared the downstairs master bedroom, where several drug-related items were found. He also said he had seen Cecil "snort" methamphetamine more than ten times at the house.

Cecil contends that this evidence was inadequate to support his conviction for conspiracy to traffic in methamphetamine. "A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy."[34] Any person who knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine or any mixture containing methamphetamine commits the felony offense of trafficking in methamphetamine.[35]

To prove conspiracy, two elements must be shown: an agreement and an act in furtherance of it.[36] "[T]he [s]tate need not prove an express agreement between the co-conspirators; it only must show that two or more persons tacitly came to a mutual understanding to accomplish or to pursue a criminal objective."[37] Conspiracy may be shown through circumstantial evidence.[38] The conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators and other circumstances, such as presence, companionship and conduct before and after the

---

[34] OCGA § 16-4-8.

[35] OCGA § 16-13-31 (e).

[36] *Aguilera v. State*, 293 Ga. App. 523, 526 (2) (667 SE2d 378) (2008).

[37] *King v. State*, 275 Ga. App. 450, 451 (620 SE2d 570) (2005) (citations and punctuation omitted).

[38] Id.

commission of the alleged offense.[39]

Viewed in the light most favorable to the verdict, the evidence here was sufficient for the jury to infer the existence of a conspiracy and Cecil's tacit understanding with his wife regarding the sale of methamphetamine from their home, including the sale of a trafficking amount on October 26.[40] The tacit understanding between Cecil and his wife and the fact that Marlene engaged in an overt act to effect the object of the conspiracy were sufficient.[41]

6. Cecil claims that the trial court erred by charging the jury, over objection, on deliberate ignorance. The court charged the jury as follows:

> Ladies and gentlemen, I charge you that the elements of knowledge or intent may be satisfied by inferences drawn from proof that a Defendant deliberately closed his or her eyes to what would otherwise have been obvious to him or her. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a Defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. Again, whether or not you draw any such inference is a matter solely within your discretion.

During its deliberations, the jury asked to hear this charge again, and the court complied.

This charge was a modified version of the charge at issue in *Perez-Castillo v. State*,[42] which looked to the Eleventh Circuit Court of Appeals for guidance on when the deliberate ignorance charge is warranted.[43] In *United States v. Prather*,[44] the Eleventh Circuit recognized that the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance of criminal activity.[45]

---

[39] *Aguilera*, supra; *Williamson v. State*, 285 Ga. App. 779, 783 (4) (648 SE2d 118) (2007).

[40] See *Smith v. State*, 253 Ga. App. 131, 133 (1) (558 SE2d 455) (2001) (evidence that defendant was in car where cocaine was found and had participated in attempt to avoid apprehension showed tacit agreement to participate in conspiracy to possess more than 28 grams of cocaine).

[41] See id. at 134 (2) (a) and n. 14 (where transactions involving relatives are under review, slight circumstances are often sufficient to induce a belief that there was collusion between the parties); *McGhee v. State*, 172 Ga. App. 187 (323 SE2d 3) (1984) (the act of one conspirator is considered to be the act of all conspirators).

[42] 257 Ga. App. 633 (572 SE2d 657) (2002).

[43] Id. at 634-635.

[44] 205 F3d 1265 (11th Cir. 2000).

[45] Id. at 1270 (II) (A).

The deliberate ignorance instruction is based on the alternative to the actual knowledge requirement at common law that if a party has his suspicions aroused but then deliberately omits to make further [i]nquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.[46]

A deliberate ignorance instruction is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.[47]

A court should not instruct a jury on deliberate ignorance when the evidence points to actual knowledge or no knowledge on the defendant's part.[48]

The deliberate ignorance charge was appropriate in *Perez-Castillo* because the defendant denied any knowledge that certain boxes contained contraband yet admitted accepting delivery of those boxes under a false name, transferring the boxes to another person in a public restroom and meeting that person in a separate location to receive $200 per box for accepting delivery.[49] Castillo's defense was his lack of actual knowledge regarding the contents of the packages.[50]

Here, however, Cecil admitted that he knew about the drug activity in the house, but denied participating in it. This was not one of "those comparatively rare cases where . . . there are facts that point in the direction of deliberate ignorance."[51] Thus, the deliberate ignorance instruction was unwarranted, and the trial court erred in giving it.

Not only was the deliberate ignorance instruction not warranted, it contained an erroneous statement. The court charged that intent is an essential element of any crime and must be proved by the state beyond a reasonable doubt. Yet the deliberate ignorance charge instructed the jury that the element of intent could be satisfied by inferences drawn from proof that Cecil deliberately closed his eyes to what would otherwise have been obvious to him. The deliberate ignorance instruction, when appropriate, provides another way to

---

[46] Id. (citation and punctuation omitted).

[47] *Perez-Castillo*, supra at 635, quoting *United States v. Schlei*, 122 F3d 944, 973 (II) (D) (11th Cir. 1997) (punctuation omitted).

[48] *Schlei*, supra.

[49] *Perez-Castillo*, supra at 633-634.

[50] Id. at 635.

[51] *Prather*, supra (citation and punctuation omitted).

satisfy the knowledge element of a criminal offense, not the intent element.[52]

"All charging errors are presumed to be prejudicial unless the record shows them to be harmless."[53] Viewing the trial court's charge as a whole, as we must,[54] we conclude that the charge may have misled or confused the jury regarding what the state was required to prove, especially given that the jury asked to have the deliberate ignorance charge repeated. Moreover, the evidence of Cecil's involvement in the conspiracy was not overwhelming. Under these circumstances, the trial court's error in giving the deliberate ignorance instruction was not harmless.[55] Cecil's conviction must therefore be reversed.[56]

*Judgment affirmed in Case No. A09A1433. Judgment reversed in Case No. A09A1461. Smith, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 20, 2009 

*Glynn R. Stepp,* for appellant (case no. A09A1433).
*Sharon L. Hopkins,* for appellant (case no. A09A1461).
*Daniel J. Porter, District Attorney, Dawn H. Taylor, Assistant District Attorney,* for appellee.

---

[52] See *id.; Schlei, supra; Aguilera, supra* at 525 (1); Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Deliberate Ignorance (As Proof Of Knowledge).

[53] *Ward v. State,* 271 Ga. 62, 64 (2) (515 SE2d 392) (1999) (citation omitted).

[54] Id.

[55] See *Baird v. State,* 260 Ga. App. 661, 664 (1) (580 SE2d 650) (2003) (where erroneous charge that allowed jury to make inference not supported by the evidence may have misled jury regarding state's burden of proving element of offense and evidence was not overwhelming, erroneous charge was not harmless); *Colon v. State,* 256 Ga. App. 505, 509-510 (5) (a) (568 SE2d 811) (2002) (error in giving charge with clearly erroneous statement was not harmless).

[56] See *Ward, supra* (where charging error misled or confused the jury with regard to the state's burden of proving guilt beyond a reasonable doubt, conviction must be reversed); *Baird, supra.*