## A00A0482, A00A0483. SALTIS v. A.B.B. DAIMLER BENZ (NORTH AMERICA N.O., INC.); and vice versa.
### (533 SE2d 772)

ELDRIDGE, Judge.

Dr. Lawrence Saltis, M.D., received injuries when the shuttle train doors at Atlanta Hartsfield International Airport closed on him in the doorway as he attempted to exit the train and to stop the doors from closing on a child. As the train doors closed, they caught his carrying bag strap, while the bag remained inside the train. The strap of the bag was over his shoulder, and his arm was wrenched as the

train pulled away. A.B.B. Daimler Benz (North America N.O., Inc.) d/b/a Ad Tranz Atlanta, Inc., appellee-defendant, operated and maintained the shuttle trains as gratuitous public conveyance for passengers within the terminals and concourses. Defendant moved for summary judgment on contributory negligence, assumption of risk, and lack of negligence. The trial court granted defendant's motion. This Court finds, however, that the duty of care owed to such passenger was extraordinary care. Defendant's evidence failed to pierce the complaint, and plaintiff's evidence raised material issues of fact for jury determination. Therefore, we reverse.

### Case No. A00A0482

1. Plaintiff's three enumerations of error go to three different reasons why the trial court erred in granting summary judgment, and we agree as to each.

(a) Under OCGA § 9-11-56 (a), (c), and (e), the defendant must pierce the contentions of the complaint with competent evidence, showing from the entire record or the absence of evidence that at least one essential element of each theory of recovery is absent or cannot be proven at trial. The movant must carry this initial burden of proof before the burden of coming forward with some evidence to create a material issue of fact shifts to the respondent. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

In this case, the issues deal with duty and breach of duty of extraordinary care by the defendant regarding the operation of a carrier of passengers on a public conveyance, i.e., the shuttle train, through the terminals and concourses of the airport without fee. OCGA §§ 46-9-132; 51-1-3; *Harlan v. Six Flags Over Ga.*, 250 Ga. 352, 353 (297 SE2d 468) (1982). Thus, defendant could be held liable by a jury for slight negligence. OCGA §§ 46-9-132; 51-1-3. See *Helmly v. Savannah Office Bldg. Co.*, 13 Ga. App. 498, 499 (2) (79 SE 364) (1913), overruled on other grounds, *Darlington Corp. v. Finch*, 113 Ga. App. 825, 828-829 (149 SE2d 861) (1966).

> A carrier of passengers is one that undertakes the transportation of persons; a person or corporation who undertakes to transport or convey persons from one place to another, gratuitously or for hire. Such a carrier may be either a special or private carrier, or a public or common carrier. To constitute a public conveyance a common carrier, it is not necessary that it come within the definition of a public utility, so as to be subject to the rules and regulations of a public utility commission.

(Citations and punctuation omitted.) *Scott v. Torrance*, 69 Ga. App.

309, 319-320 (3) (25 SE2d 120) (1943). See also *Eason v. Crews*, 88 Ga. App. 602, 613 (1) (77 SE2d 245) (1953); *Helmly v. Savannah Office Bldg. Co.*, supra at 499.

The shuttle train or "people mover," operated and maintained by the defendant, gives free transportation inside the secured area of the airport between the passenger terminals and concourses to airline passengers, individuals who come to meet or to see off the passengers, and airline employees. Such mode of transportation has the same status of public transportation as escalators and elevators, which also provide gratuitous transportation to passengers within a building, facility, or complex. See *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 458 (2) (475 SE2d 188) (1996). See also *Bullard v. Rolader*, 152 Ga. 369, 371 (1) (110 SE 16) (1921); *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 524 (1) (484 SE2d 249) (1997); *Helmly v. Savannah Office Bldg. Co.*, supra at 499.

However, unlike automatic elevator doors with electronic beams or Metropolitan Atlanta Rapid Transit Authority train doors, which service the airport with substantially reduced pressure that will not close on passengers when there exists resistance or an obstruction between the doors and will automatically reopen, the shuttle trains' automatic doors do not automatically reopen and require more than 30 pounds of force per door panel to stop them from closing, i.e., more than 60 pounds of combined force to stop both doors from closing. See *Darlington Corp. v. Finch*, supra at 828 (where all the passenger had to do to stop the elevator doors from closing was to touch the rubber flange on one door). With the crowds of passengers with shoulder hanging bags, diaper bags, or shoulder purses at the shuttle stops and on the trains at the world's busiest airport, as well as the presence of young children, defendant should have reasonably foreseen that a child or other person would be at risk between the doors; that someone would attempt to stop the doors from closing; or that the crowds would delay detraining so that the doors would close on a body, clothing, or luggage with a shoulder strap around a passenger being caught between the doors. The duty to exercise extraordinary care to protect passengers mandates that more than a mere general warning must be provided to satisfy the requisite duty of care, particularly when 30 pounds of force per door are required to stop them from closing and the doors do not reopen automatically under resistance like elevators or MARTA train doors. "The exercise of extraordinary diligence is required in the transportation of passengers while in the [shuttle], and also in giving intended passengers reasonable opportunity to enter [or detrain from] it." *Helmly v. Savannah Office Bldg. Co.*, supra at 498 (2).

Therefore, *City of Winder v. Girone*, 265 Ga. 723, 724 (462 SE2d 704) (1995), dealing with a municipal nuisance from a clogged sew-

age pipe, causing the backing up of sewage into a house, where the owner intentionally encountered a known and appreciated danger, stands distinguished on the law and facts from a personal injury case such as this, where there exists a duty of extraordinary care. Defendant presented evidence as to what usually happened and not as to what actually happened on the day of the incident, because the train was automated and no one went to investigate, since there was no computer-generated warning. While this evidence showed that the doors normally took 3.2 seconds to open and approximately 4.5 seconds to close, the length of time that the doors remained open to detrain a crowded train was never revealed, nor did it show whether such times applied on this occasion. Also, the evidence showed that under industry standards the doors closed with 30 pounds of pressure per panel "which is an accepted and safe amount of pressure"; the evidence did not show that was the pressure on that occasion. Further, the evidence failed to reveal what industry's standards had been referenced and under what conditions such standards would be appropriate.

Robert F. Alexander, who gave the affidavits, identified himself merely as defendant's operations manager at Hartsfield but failed to demonstrate qualifications as an expert witness to express the opinion that 30 pounds of force per door panel of closing pressure constituted an "accepted and safe amount of pressure" or that such constituted a "safe and accepted amount of pressure in the industry," or to present a factual predicate for a lay opinion. OCGA § 24-9-67; *Johnson v. Knebel*, 267 Ga. 853, 855 (1) (485 SE2d 451) (1997). Thus, such opinions had no probative value and were insufficient to support the motion as admissible evidence. Id. at 858.

Alexander testified that every time the train leaves the station "an audible warning is given that the train is leaving the station and that passengers should prepare themselves" and "passengers should watch for the doors as they are closing"; however, he could not testify that this occurred on this car at the time of the injury.

Alexander never testified that there existed a warning on the outside of the train, that the doors would not reopen automatically, that over the inside of the door there was a light warning of closing, or that the "audible warning" inside the train warned that the doors would not reopen, although such facts were argued to the trial court.

The statement of undisputed material fact erroneously contended that Alexander's affidavit contained such facts, which do not exist either there or anywhere in the record of evidence. A careful examination of both Alexander's affidavits fails to reveal facts that warnings were given "that the doors do not spring back," "[t]here are additionally visual warnings inside and outside the people mover indicating that the doors do not spring back," or "[a]ll of these condi-

tions and warnings were in place on October 17, 1994." Thus, the record is devoid of evidence to support such claimed warnings that the doors would not reopen. "Contentions as to undisputed material facts under Rule 6.5 of the Uniform State Court Rules are not evidence for purposes of summary judgment, nor does any lack of response to such contentions amount to an admission of fact." (Citations omitted.) *Southern Gen. Ins. Co. v. Davis*, 205 Ga. App. 274, 275 (421 SE2d 780) (1992).

While there was some warning that the doors were closing, the content of the warning failed to specify the actual danger of doors not automatically reopening and of the substantial combined closing force of 60 pounds, so as to satisfy the duty of extraordinary care. See *Helmly v. Savannah Office Bldg. Co.*, supra at 498, hn. 2.

Defendant's evidence failed to satisfy movant's burden of proof, even when the liberal standards of *Lau's Corp. v. Haskins*, supra, are applied. OCGA § 9-11-56 (e); *Eason v. Crews*, supra at 613.

(b) Pretermitting that movant failed to carry its burden of proof, plaintiff's testimony and the affidavit of Christopher A. Ricker constitute some contrary evidence, so that plaintiff came forward with some evidence to create a jury issue. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, supra.

Plaintiff started to get off the crowded train; a strange child started to follow him off; and plaintiff blocked the door to keep the doors from closing on the child and separating the child from his mother. However, the automatic doors would not stop closing, and plaintiff could not exert sufficient force to stop the doors closing. When plaintiff stepped out the doors to protect himself from being caught between them, plaintiff's shoulder bag got caught inside the car, but the strap held plaintiff to the bag from the outside of the train. The train started to move, pulling plaintiff along. Finally, plaintiff succeeded in pulling himself free from the shoulder strap but received injuries in the process. This raised issues of comparative negligence, as well as gave rise to circumstantial evidence of negligence of the defendant. See *Chapman v. Turnbull Elevator*, 116 Ga. App. 661, 664-666 (158 SE2d 438) (1967).

At the time of plaintiff's injury, he approached and entered the train while the doors were open, concealing any warning signs on the outside of the doors. The train was packed so that any signs inside the train would be obscured. The plaintiff was among the last to board the train. Any audio announcement or warning given prior to the train's departure was unintelligible, because of talking, laughing, and audio quality. After the train started, plaintiff heard an announcement that was unintelligible because of audio and crowd noise. He saw no visual warnings inside the train. Thus, foreseeable conditions, i.e., open doors obscuring warning signs, crowded cars

obscuring warning signs inside, and crowd noise masking any audio warnings, raised a factual question as to the adequacy of warnings.

The affidavit of Ricker created a jury question, although it covered a time period over five years later, as to the adequacy of warnings. He stated that there existed visual warning signs on the outside of the door panels warning that the automatic doors will not reopen, but that such signs became concealed when the doors open. He also testified that inside the train there existed no such warnings. Further, he testified that, at the time of the departure, there is an auditory warning outside the train that the doors will not reopen. A similar auditory warning occurred inside the train. He expressed a lay opinion that inside the train such warning was difficult for him to hear when the train was crowded, a present sense observation of multiple facts and factors. *Johnson v. Knebel*, supra at 856-857 (2)

This Court has held that *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (493 SE2d 403) (1997), applies to the automatic leveling of elevators as well as conditions of floors; therefore, by extension such principles apply to similar automatic doors, so that the passenger's contributory or comparative negligence was a matter for a jury. *Scarbrough v. Dover Elevator Co.*, 232 Ga. App. 149 (500 SE2d 616) (1998). "Passengers entering [or exiting] an elevator [or automatic shuttle train] are confronted with a multitude of events: The opening doors, exiting passengers, other passengers entering along with this passenger, and the constant realization that the doors will close on a timed basis." (Punctuation omitted.) *Scarbrough v. Dover Elevator Co.*, supra at 154. Thus, a passenger has little opportunity to decide what is the reasonable course of conduct in the exercise of ordinary care for his own safety under the circumstances of this case, i.e., protection of a child versus self-protection in the seconds when the doors are closing.

Furthermore, assumption of the risk requires the subjective understanding and appreciation of a specific, particular danger with actual and full knowledge of the risk and a conscious choice to encounter such known specific risk despite the danger. Such subjective knowledge must exist before the assumption of the risk defense will bar liability, although contributory negligence could bar liability. *Vaughn v. Pleasent*, 266 Ga. 862, 864-865 (1) (471 SE2d 866) (1996). Absent a specific warning of the particular risk encountered that brings the risk home to the plaintiff, "general, non-specific [warnings of the] risks that might be associated with such conditions or activities" would be inadequate for assumption of the risk to attach. Id. at 864. Thus, a jury issue exists as to assumption of the risk and contributory negligence. Summary judgment must be reversed.

*Case No. A00A0483*

2. Daimler Benz's enumeration of error is that the trial court erred in denying the motion to strike Ricker's affidavit, because it "did not set forth facts as would be admissible in evidence and thus violated the requirements of OCGA § 9-11-56 (e)." We do not agree.

Defendant contends that Ricker failed to show that the warnings he saw and heard were the same or similar to those in this occurrence in order to be admissible, citing *Skil Corp. v. Lugsdin*, 168 Ga. App. 754 (309 SE2d 921) (1983). All that need be shown for admissibility is that the facts and circumstances be sufficiently similar to have probative value; where the evidence shows that there exists substantial similarity between the condition or occurrence, the weight and probative value of such prior or subsequent occurrence rest with the jury to decide. *Cochran v. Lowe's Home Center*, 226 Ga. App. 417, 418-419 (487 SE2d 50) (1997).

Alexander's affidavit did not indicate that any remedial changes or any changes had occurred as to the warnings given inside or outside of the train and when the warnings were given, which corroborated Ricker's affidavit. In fact, Ricker's affidavit gave the specific nature of the warnings, i.e., the doors would not reopen, which Alexander's failed to do. Further, Ricker's affidavit received corroboration from the plaintiff that some auditory message occurred outside the shuttle train prior to the train leaving, as well as inside the shuttle train. The plaintiff testified that audio and crowd noise prevented him from understanding the messages; Ricker stated his lay opinion that the warning appeared to him difficult to understand when the train had a crowd of passengers, which was a substantially similar condition to the condition about which plaintiff testified regarding the occurrence.

While the record lacks evidence of a visual warning sign or of the auditory warning that the doors would not reopen, except for Ricker's affidavit, the defendant's factually unsupported statement of undisputed material fact asserts the same facts as stated by Ricker, which would estop the defendant from asserting otherwise. The only portion of Ricker's affidavit not supported by either Alexander's affidavit or defendant's assertion of unproven fact is Ricker's statement of opinion, which was corroborated by the plaintiff.

For admission into evidence as to each prior or subsequent occurrence, the party must demonstrate through some evidence only of substantial similarity, which has a spectrum of evidence from identical facts and circumstances to barely substantially similar facts. See *Mills v. Norfolk Southern R. Co.*, 242 Ga. App. 324 (3) (526 SE2d 585) (2000). See also *Cochran v. Lowe's Home Center*, supra at 418-419; *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 877-878 (1) (447

SE2d 302) (1994); *Skil Corp. v. Lugsdin,* supra at 756 (1). Thus, the trial court did not err in denying the motion to strike.

*Judgment affirmed in Case No. A00A483. Judgment reversed in Case No. A00A0482. Blackburn, P. J., and Barnes, J., concur.*

DECIDED APRIL 14, 2000.

*Eidson & Brennan, Timothy R. Brennan,* for appellant.
*Mozley, Finlayson & Loggins, Sewell K. Loggins, J. Marcus Howard,* for appellee.