## A02A0062. COLON v. THE STATE.
(568 SE2d 811)

MIKELL, Judge.

Kevin Brian Colon appeals from the trial court's denial of his motion for new trial following his conviction by a jury of driving under the combined influence of alcohol and drugs, failure to maintain lane, and improper stopping.[1] Because the trial court gave an erroneous instruction on involuntary intoxication, we reverse and remand.

Viewed with all inferences in favor of the verdict, the evidence was that Georgia World Congress Center Police Lieutenant Cameron was on his meal break at approximately 2:00 a.m. on July 29, 2000, at a restaurant on Northside Drive in Atlanta. He was approached by a taxi driver who told him there was a driver in the middle of the roadway at Howell Mill and 14th Street and he was going to kill someone. Cameron went to the intersection and found a Mercedes convertible stopped in the middle of the intersection with Colon at the wheel. The car was not in a single lane, but was facing east in the westbound portion of 14th Street. The engine was running, but Colon could not get the car into gear and traffic was trying to go around him. Cameron asked Colon to move the car out of the intersection, but Colon did not act like he heard the request, which was made over

---

[1] Colon was also convicted of driving under the influence of alcohol and driving under the influence of drugs, but these two counts were merged into the driving under the influence of alcohol and drugs at sentencing.

a loudspeaker. As Cameron approached the car on foot, the Mercedes lurched to the side of the road where Colon threw it into neutral or park and began to rev the engine as if trying to pull away. Cameron put his car behind Colon and asked Colon to turn the car off. Colon, who was disoriented, replied that he could not find the key, although it was in the ignition.

Cameron contacted Atlanta police, and Officer Wallace responded. He found Colon still in the car, attempting to drive. Wallace reached into the Mercedes and removed the keys. As he did so, he noticed a strong odor of alcohol. He asked Colon to do a "modified attention" stand, but Colon was unable to do it and appeared to be trying to get things off his body. Wallace read Colon the implied consent warning, cuffed him, and placed him in the backseat of the police car. Colon, who was a body builder and in excellent shape, was twitching, and Wallace initially thought he had "crack crawlies." Colon then began to vomit white liquid, and Wallace asked him "man, what's wrong with you?" In response, Colon said he had been drinking and had some GHB.[2] Colon was removed from the police car until he finished vomiting.

Colon tested positive for alcohol, 0.09 grams per 100 milliliters of blood, and positive for GHB, 98 milligrams per liter of blood.

The evidence was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Colon's first enumeration is that the trial court erred in denying his oral motion in limine which sought to exclude his statement regarding GHB because he had not been given his *Miranda* warnings prior to making it. *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

We agree, as the trial court apparently concluded, that Colon was in custody for purposes of *Miranda* at the time the statement was made. *State v. Whitfield*, 214 Ga. App. 574 (3) (448 SE2d 492) (1994). For the statement to be excluded, however, it is also necessary that it be the result of express questioning or its functional equivalent, i.e., " 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' [*Rhode Island v. Innis*, 446 U. S. 291, 300-301 (100 SC 1682, 64 LE2d 297) (1980).]" *Walton v. State*, 267 Ga. 713, 717 (4) (482 SE2d 330) (1997).

Routine booking questions attendant to an arrest are generally considered as exempt from *Miranda*, because such questions are not

---

[2] GHB, known as Georgia Home Boy, is gamma hydroxybutyric acid, a central nervous system depressant.

related to the investigation of the case, serve a legitimate administrative need, and are not generally intended to elicit incriminating information. See *Franks v. State*, 268 Ga. 238, 239 (486 SE2d 594) (1997); *Brooks v. State*, 237 Ga. App. 546, 547 (1) (515 SE2d 851) (1999). As recognized in *Franks v. State*, supra at 242 (Sears, J., concurring specially), police officers have the responsibility to ask medical questions as part of routine booking in order to fulfill the government's obligation to provide medical treatment to one in custody. See also *Williams v. Dept. of Corrections*, 224 Ga. App. 571, 575 (481 SE2d 272) (1997).

There is nothing in the record here to indicate anything other than Officer Wallace's concern for Colon's physical condition as a result of the violent vomiting which he suffered, and, therefore, there was no clear error in the trial court's denial of Colon's motion in limine.

2. Colon also contends that the implied consent warning read to him was insufficient and the results of the tests of his breath and blood should have been excluded.

Colon argues that the officer failed to read the final five words, "under the Implied Consent Law," in the sentence "[w]ill you submit to the state administered chemical tests of your (*designate which tests*) under the implied consent law?" That failure, however, is not reflected in the transcript or record here. While the officer did, when he read the warning during trial from the implied consent warning card he carried with him, omit these five words, he also stated that he read the warning to Colon on the scene just like it was on the card, which included those five words.

Even assuming that this omission occurred, since the first clause of the warning is that "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine or other bodily substances," we fail to see how such an omission could be said to have changed the substance of the meaning of the warning. There was no error. *Harrison v. State*, 235 Ga. App. 78, 79 (508 SE2d 459) (1998); *State v. Hopkins*, 232 Ga. App. 705 (503 SE2d 590) (1998).

3. During the direct examination of Dr. McCurdy, the state toxicologist, he was asked by the state whether being under the influence of GHB would cause one to be "incapacitated." Colon's objection was that this "called for a conclusion of law that would either be within the province of the Court or the jury" and Dr. McCurdy was not "qualified as an expert in law." He complains here of the denial of this objection because the testimony regarding Colon's capacity was "the ultimate issue in the case and also contained a mixture of law and fact" which should have been left to the jury.

To the extent that the objection voiced at trial is included in the

enumeration here, it is considered. See *Chesser v. State*, 228 Ga. App. 164, 165 (1) (491 SE2d 213) (1997).

Dr. McCurdy testified that he held a Ph.D. degree in medicinal chemistry with a minor in pharmacology and had been, for 29 years, a research toxicologist for the state crime lab. Additionally, he taught pharmacology and toxicology at Georgia State University and had published approximately 25 papers in these areas. He was tendered by the state as an expert witness in the areas of "alcohol, GHB, toxicology, and pharmacology."[3]

Dr. McCurdy properly was allowed to testify regarding the effects of GHB combined with alcohol on a person's capacity to know right from wrong. *Baise v. State*, 232 Ga. App. 556, 559 (2) (502 SE2d 492) (1998); *Vaughn v. State*, 228 Ga. App. 185, 186 (491 SE2d 426) (1997).

There was no merit to the objection raised below.

4. Colon enumerates as error the trial court's failure to allow Sweeney, a pharmacist, to testify as an expert on his behalf.

A decision as to whether a witness possesses such learning or experience to qualify as an expert witness lies within the sound discretion of the trial court and will not be disturbed unless manifestly abused. *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993). An expert is one whose habits and profession endow that person with the particular skill needed in forming an opinion on the subject matter at inquiry. *Sales v. State*, 199 Ga. App. 791 (1) (406 SE2d 131) (1991). Formal education in a particular subject is not always a prerequisite for expert status, since special knowledge may be derived from experience as well as from study. *Taylor v. State*, 261 Ga. 287, 290 (404 SE2d 255) (1991).

*Griffin v. State*, 243 Ga. App. 282, 286 (5) (531 SE2d 175) (2000).

Here, Sweeney testified he had a B.S. in biochemistry and pharmacy and had taken some graduate courses but was not a pharmacologist.[4] Asked how he had obtained his familiarity with GHB and its interaction with the human body, he said, "just my education, reading on the drug." He had never dealt with anyone under the influence of GHB, and his reading on the drug consisted primarily of

---

[3] Although Colon argues that Dr. McCurdy was never properly tendered and accepted by the court as an expert, the record shows that he was tendered and allowed to testify as an expert regarding alcohol, GHB, pharmacology, and toxicology. *Wiley v. State*, 238 Ga. App. 334, 335 (3) (519 SE2d 10) (1999).

[4] This court has previously found a pharmacologist competent to testify regarding the effects of drugs on a person. See, e.g., *Sinkfield v. Oh*, 229 Ga. App. 883, 885 (1) (495 SE2d 94) (1997).

otherwise unspecified information on the Internet. His pharmacy practice consisted of working with diabetics and asthmatics.

There was no manifest abuse in the trial court's exercise of discretion in concluding that, on these facts, Sweeney had not been shown to have sufficient expertise to testify *as an expert* on this issue. See *Saltis v. A.B.B. Daimler Benz &c.*, 243 Ga. App. 603, 606 (1) (a) (533 SE2d 772) (2000).

Further, although Sweeney was not allowed to testify as an expert, there was no attempt by Colon to have him testify as a lay witness, which he could have done. See *Bailey v. State*, 229 Ga. App. 869, 874 (4) (494 SE2d 672) (1997); *McLelland v. State*, 203 Ga. App. 93, 95 (6) (416 SE2d 340) (1992).

5. In his fifth and sixth enumerations, Colon complains of the trial court's charge on involuntary intoxication and its failure to give his Request to Charge No. 9. They are considered together.

(a) Regarding the involuntary intoxication charge, Colon's specific objection is to the court's instructing the jury that "[t]he defense of involuntary intoxication is not available to excuse driving under the influence." This instruction amounted to reversible error.

The entire portion of the court's charge relating to involuntary intoxication was that

> [a] person shall not be found guilty of a crime when at the time of the conduct constituting the crime, the person because of involuntarily [sic] intoxication did not have sufficient mental capacity to distinguish between right and wrong in relation to the criminal act. Involuntary intoxication means intoxication caused by (a) consumption of a substance through excusable ignorance or (b) the coercion, fraud, trick, or contrivance of another person. The defense of involuntary intoxication is not available to excuse driving under the influence. It absolves responsibility only if the intoxication renders the defendant incapable of distinguishing right from wrong. If the inability to distinguish right and wrong is the product of voluntary intoxication, there is no defense.

While it is true that the jury charge must be considered as a whole when determining its correctness, *Roberson v. State*, 236 Ga. App. 654, 655 (1) (512 SE2d 919) (1999), this charge contained the clearly erroneous statement that involuntary intoxication was not available as an affirmative defense to driving under the influence. See *Larsen v. State*, 253 Ga. App. 196, 198 (1) (558 SE2d 418) (2002); *Flanders v. State*, 188 Ga. App. 98 (371 SE2d 918) (1988); accord *Commonwealth v. Darch*, 54 Mass. App. Ct. 713 (767 NE2d 1096)

(2002). This declarative assertion by the trial judge was straightforward and unambiguous. The modifiers following it are not likely to have erased an erroneous impression from the minds of the jurors. Furthermore, the error was not harmless, as the defendant raised the issue of involuntary intoxication in his testimony when he claimed that someone put an unknown drug in his drink, unbeknownst to him. See *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991).

The case at bar illustrates again that instructing juries in the precise language of the Suggested Pattern Jury Instructions serves the goal of judicial economy as well as the goal of providing justice to both sides, the state and the defendant.

(b) Colon's Request to Charge No. 9 was that "[t]o convict the defendant on the offense of Driving Under the Influence, the State must prove beyond a reasonable doubt that the Defendant consciously intended to be in control of a moving vehicle while intoxicated not merely that the Defendant's actions caused the vehicle to move."

The trial court did give an appropriate charge on intent, although not in the language requested by Colon, and there was no error as claimed. *Mote v. State*, 212 Ga. App. 551, 553 (2) (442 SE2d 799) (1994); see *Savage v. State*, 252 Ga. App. 251, 253-255 (1), (2) (556 SE2d 176) (2001).

In summary, because the trial court erred in instructing the jury on involuntary intoxication, the matter should be reversed and remanded for a new trial.

*Judgment reversed and case remanded. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 12, 2002.

*Head, Thomas, Webb & Willis, Thomas J. Thomas*, for appellant.
*Joseph J. Drolet, Solicitor-General, Ebony A. Phillips, Assistant Solicitor-General*, for appellee.