# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00614-CR

---

**Carl Edward Heiden Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2006-386, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Carl Edward Heiden, Jr., of the offense of possession with intent to deliver a controlled substance, methamphetamine, in an amount more than 4 grams and less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West Supp. 2008). Punishment was assessed at ten years' imprisonment, probated for ten years, and a $2,000 fine. In a single issue on appeal, Heiden challenges the district court's denial of his motion to suppress evidence. We will affirm the judgment.

## BACKGROUND

The underlying facts of this case are not disputed on appeal. On August 8, 2006, a court order was issued to take Heiden into custody for the purpose of transporting him to a state hospital for a mental health examination. *See* Tex. Health & Safety Code Ann. § 573.011

(West 2003), §§ 573.012, .021 (West Supp. 2008), §§ 573.022, 574.045 (West 2003). Attached to the order was an affidavit by Heiden's mother in which she stated the following:

> [Heiden] has sleepless nights and thinks some one is watching him through his bedroom windows and spraying some kind of poison into his room to kill him.
>
> He has made phone calls to the police and 911 because he wants them to catch whoever is doing this to him.
>
> . . . .
>
> I'm greatly concerned that he poses a danger to himself or others.
>
> He threatens that he will kill whoever is doing these things to him and in his delusional state of mind he may at some point think that this could be myself or his father or an innocent person.
>
> Since he does have access to firearms I feel that this poses a threat to both himself and others.
>
> I feel it has reached a point where something has to be done before something drastic occurs.
>
> I want to get help for him before he hurts someone.
>
> This morning he was attempting to make a molatoff [sic] cocktail with a light bulb which he had drilled a hole in one end.

That afternoon, at approximately 3:00 p.m., three officers from the Comal County Sheriff's Office arrived at the residence of Heiden's parents—where Heiden was living at the time—to execute the order. One of the officers, Deputy Enrique Sanchez, testified at the hearing on the motion to suppress. According to Sanchez, as the officers approached the residence, Heiden arrived in his car. Sanchez testified that, as Heiden was getting out of the car, Heiden's father came out of the house and "engaged in a conversation with his son." The officers then approached

2

Heiden, verified his identity, and informed Heiden of the order and "our purpose or reason for being there." Sanchez testified that Heiden "immediately got agitated with his father." At this point, Sanchez testified, Deputy Jeff Adams proceeded to handcuff him. When asked if, in his mind, Heiden was under arrest at this point, Sanchez testified, "Yes, he's in custody." However, the officers did not Mirandize[1] Heiden or tell him that he was under arrest. Instead, Sanchez recalled, "we told him that we were placing handcuffs on him for safety purposes."

Next, Sanchez searched Heiden. In response to defense counsel's questioning, Sanchez described the search as follows:

> A: It's a—in the beginning what we do is considered a frisk search for weapons. We feel the outer part of the clothing. And then we go a little bit further on an arrest, which is the search incident to arrest. We go into the person's pockets and anywhere where contraband can be hidden.
>
> Q: Okay.
>
> A: Or weapons.
>
> Q: Okay. If I understand you correctly, first you do just a *Terry*[2] or light frisk. And if you find something, then you search a little more closely—
>
> A: Correct.

When asked what he found in the initial pat-down search, Sanchez testified, "I felt the—I guess a lump. I guess what I would call it is just an object in his pocket." Sanchez added that he believed the item to be "just an object," not a weapon. Sanchez then reached into Heiden's right front

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *See Terry v. Ohio*, 392 U.S. 1 (1968).

pants pocket and pulled out a prescription bottle. Sanchez "showed the bottle to [Heiden] and asked him if he was under any medication." According to Sanchez, Heiden volunteered, "No, that's meth." After Heiden made this statement, Sanchez opened the prescription bottle. Sanchez testified that what he saw inside the bottle was consistent with what Heiden had told him. Sanchez then "seized the evidence."

Heiden was then transported to McKenna State Hospital in San Antonio by the other officers. At some point either before or after Heiden was transported to the hospital, Sanchez searched Heiden's vehicle and seized clear, empty Ziploc bags.[3] Later, Sanchez met up with the other officers at the hospital and waited for Heiden to be evaluated. On August 9, after Heiden had been examined, another court order was issued to take Heiden into protective custody and transport him to San Antonio State Hospital. This order was executed by the same officers who executed the first order. The following day, on August 10, an arrest warrant was issued for Heiden for the offense of methamphetamine possession. Heiden was ultimately charged with the offense of methamphetamine possession with intent to deliver.

---

[3] The record contains contradictory evidence about the timing of and basis for Sanchez's search of Heiden's vehicle. At the suppression hearing, Sanchez testified that he searched Heiden's vehicle before Heiden was transported to the hospital as part of what Sanchez characterized as a "search incident to arrest." Additionally, in the offense report that was admitted into evidence during the suppression hearing, Sanchez stated that he "searched said vehicle incident to arrest." However, during trial, Sanchez testified that, after the other officers transported Heiden to the hospital, he "stayed" at the residence and searched the vehicle. Sanchez later testified at trial that, "during [Heiden's] transportation, I was able to look in his car." When asked if he was able to see anything in "plain view" in the vehicle, Sanchez testified, "That was the plastic bags." There was no testimony elicited during the suppression hearing about the bags being in plain view.

Prior to trial, Heiden filed a motion to suppress the evidence obtained when the officers took him into custody at his parents' residence. Specifically, Heiden sought to suppress (1) the prescription bottle seized from his pocket, (2) his statement to Sanchez that the bottle contained "meth," (3) the methamphetamine subsequently discovered in the bottle, and (4) the plastic bags that were seized from Heiden's vehicle. The district court denied the motion to suppress, and the case proceeded to trial.[4] Heiden was subsequently convicted and sentenced. This appeal followed.

## ANALYSIS

In his only issue on appeal, Heiden challenges the district court's denial of his motion to suppress. We review a ruling on a motion to suppress evidence for abuse of discretion. *Shepherd v. State*, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 855, at *6 (Tex. Crim. App. Sept. 10, 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In so doing, we view the facts in the light most favorable to the trial court's decision. *Id*. When, as here, the trial court fails to make explicit findings of fact, we imply fact findings that support the trial court's ruling so long as the evidence supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts. *Id*. (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)).

---

[4] The district court submitted an article 38.23 instruction. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

5

Because the motion to suppress was not relitigated by the parties during trial, our review of the district court's ruling is limited to the evidence that was before it during the hearing on the motion to suppress. *See, e.g.*, *Rangel v. State*, 250 S.W.3d 96, 97-98 (Tex. Crim. App. 2008) (per curiam) ("We refuse to examine the propriety of a trial judge's ruling based on evidence that the trial judge had no opportunity to consider when he made his ruling."); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (In reviewing trial court's ruling on admissibility of evidence, "the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made."); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) ("[I]n determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.").

**The prescription bottle and Ziploc bags**

Two of the items Heiden sought to suppress were the prescription bottle seized from his pants pocket (admitted during trial as State's Exhibit 3) and the Ziploc bags seized from his vehicle (admitted during trial as State's Exhibit 4). Regarding the bottle, Heiden asserts that Deputy Sanchez exceeded the permissible scope of a pat-down frisk by reaching into Heiden's pocket and pulling out an object that Sanchez did not believe to be a weapon. Regarding the Ziploc bags, Heiden claims that the warrantless search of his vehicle was not supported by probable cause or exigent circumstances.

The State argues that Heiden waived any error in the admission of these items. We agree. As a general rule, when a pretrial motion to suppress evidence is overruled, the defendant

6

need not subsequently object at trial to the same evidence in order to preserve error on appeal. *See Livingston v. State*, 739 S.W.2d 311, 334 (Tex. Crim. App. 1987); *Figueroa v. State*, 250 S.W.3d 490, 514 (Tex. App.—Austin 2008, pet. ref'd). However, when the defendant affirmatively asserts during trial he has "no objection" to the admission of the complained-of evidence, he waives any error in the admission of the evidence that otherwise would have been preserved by the pre-trial objection and ruling. *See Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008); *Harris v. State*, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *Boykin v. State*, 504 S.W.2d 855, 857 (Tex. Crim. App. 1974); *Figueroa*, 250 S.W.3d at 514. In this case, when the prescription bottle and the Ziploc bags were offered into evidence, the following exchange occurred:

| The Court: | Now, what are you offering now? |
|---|---|
| [Prosecutor]: | State's 3, 4, and 9, State's 3 being the prescription bottle, State's 4 being some plastic bags recovered from the defendant's vehicle, and State's Exhibit 9 being the packets of methamphetamine located inside of State's Exhibit Number 3. |
| [Defense Counsel]: | Your Honor, I have no objections to State's 3 and 4. However, I object to State's 9, the actual methamphetamine itself, and my objection is lack of foundation. |

The district court proceeded to admit all three exhibits. By affirmatively stating "no objection" at trial to the admission of two of these exhibits—the prescription bottle seized from his pocket and the plastic bags seized from his vehicle—Heiden waived any complaint on appeal concerning the admissibility of this evidence that otherwise would have been preserved at the suppression hearing.

7

*See Holmes*, 248 S.W.3d at 201; *Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); *Klapesky v. State*, 256 S.W.3d 442, 449 (Tex. App.—Austin 2008, pet. ref'd).[5]

**Heiden's statement and the methamphetamine found in the bottle**

However, there was no waiver regarding Heiden's statement to Sanchez that the prescription bottle contained "meth" and the resulting discovery of the methamphetamine within the bottle.[6] Therefore, we consider whether the district court abused its discretion in admitting this evidence.

First, we address the incriminating statement. According to Heiden, because he "had been significantly deprived of his freedom of action when he was handcuffed" by the officers, he should have been advised of his *Miranda* rights prior to being asked by Sanchez "if he was under any medication." Because he was not so advised, Heiden asserts, his statement that the bottle contained "meth" should have been suppressed as the result of improper "custodial interrogation."

---

[5] The State also asserts that Heiden waived any error in the admission of the bottle and bags by testifying about this evidence at trial. We need not address this additional ground for waiver.

[6] The State claims that Heiden waived error regarding the admission of the methamphetamine itself (State's Exhibit 9) because (1) the methamphetamine was inside the bottle at the time it was seized, (2) Heiden's objection to the methamphetamine was limited to "lack of foundation," and (3) Heiden affirmatively stated "no objection" to the admission of the lab report (State's Exhibit 7) confirming that the substance was methamphetamine. We disagree that Heiden waived his complaint as to this evidence. First, while the methamphetamine may have been inside the bottle at the time it was discovered, it was admitted into evidence separately from the empty prescription bottle. Heiden, although raising the additional objection at trial to "lack of foundation," did not affirmatively state "no objection" to the methamphetamine itself so as to waive his objection from the suppression hearing. Finally, although Heiden affirmatively stated "no objection" to the lab report verifying that the substance was methamphetamine, the lab report was admitted into evidence separately from the methamphetamine itself, and did not indicate that the substance determined to be methamphetamine was the same substance Deputy Sanchez found in the prescription bottle.

8

"Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal proceeding during its case-in-chief." *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (citing *Miranda*, 384 U.S. at 444). However, "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

Even if Heiden was in custody for purposes of *Miranda*, we conclude that the record supports an implied finding by the district court that Heiden was not subjected to "interrogation" in the sense of *Miranda*. "Interrogation" refers "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. "The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id*. "This is not to say that the intent of the police is irrelevant, for it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response." *Id*. at 301 n.7. "[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id*. at 301-02 (emphasis in original).

Furthermore, "'interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id*. at 300; *see also Berkemer v. McCarty*, 468 U.S. 420, 437 (1984) ("Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated."); *Jones v. State*, 795 S.W.2d 171, 176 n.5 (Tex. Crim. App. 1990) ("[T]he *Miranda* safeguards do not exist to protect suspects from the compulsion inherent in custody alone, nor do they protect suspects from their own propensity to speak, absent some police conduct which knowingly tries to take advantage of the propensity."). Thus, not all post-arrest police questioning can be classified as interrogation. *Jones*, 795 S.W.2d at 174; *Rodriguez v. State*, 191 S.W.3d 428, 447 (Tex. App.—Corpus Christi 2006, pet. ref'd). Types of questions that are not considered interrogation include "routine inquiries, questions incident to booking, broad general questions such as 'what happened' upon arrival at the scene of a crime, and questions mandated by public safety concerns e.g. 'where did you hide the weapon' when the weapon has just been hidden in the immediate vicinity." *Jones*, 795 S.W.2d at 174 n.3. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478. "In distinguishing situations which require safeguards to protect the privilege against self-incrimination from those that do not, the *Miranda* court pointed to isolation and intimidation as key aspects of an interrogation that undermine an individual's ability to speak voluntarily." *Rodriguez*, 191 S.W.3d at 447.[7] "In order to determine whether interrogation

---

[7] For example, the cases in *Miranda* involved "incommunicado interrogation of individuals in a police-dominated atmosphere" in which the defendants were "thrust into an unfamiliar atmosphere and run through menacing police interrogation procedures." 384 U.S. at 445, 457.

occurred, we do not look at the statements made by police in a vacuum; rather we construe those statements in light of the circumstances of the interaction between the police and the accused on each particular occasion." *Moran v. State*, 171 S.W.3d 382, 388 (Tex. App.—Austin 2005), *rev'd*, 213 S.W.3d 917 (Tex. Crim. App. 2007) (citing *Morris v. State*, 897 S.W.2d 528, 532 (Tex. App.—El Paso 1995, no pet.)).[8] Interrogation, as that term has been defined by the courts, usually involves situations in which an officer asks questions of a suspect relating to a criminal investigation. *See, e.g.*, *Innis*, 446 U.S. at 301 n.5 (noting that "incriminating response" refers to "any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial"); *Ramirez v. State*, 105 S.W.3d 730, 741 (Tex. App.—Austin 2003, no pet.) (defendant suspected of marihuana possession; officer had found contraband in defendant's garage, took defendant into custody and asked him, "Is there anything else I'm going to find in there that's illegal, any more marihuana?"; question held to be interrogation); *Castleberry v. State*, 100 S.W.3d 400, 404 (Tex. App.—San Antonio 2002, no pet.) (during burglary investigation, car in which suspects were found was inventoried; officer found knife under driver's seat and asked suspects "whose knife it was"; question held to be interrogation); *Sims v. State*, 735 S.W.2d 913, 918 (Tex. App.—Dallas 1987, pet. ref'd) (defendant suspected of driving while intoxicated; officer asked suspect "when did

---

[8] *See also Martinez v. State*, No. 04-06-00812-CR, 2008 Tex. App. LEXIS 5430, at *12 (Tex. App.—San Antonio July 23, 2008, pet. dism'd) (designated for publication); *Bisor v. State*, 2007 Tex. App. LEXIS 2223, at *9-10 (Tex. App.—Dallas Mar. 22, 2007, no pet.) (not designated for publication).

you last eat" and "what did you eat"; questions held to be interrogation because responses could be incriminating in context of DWI trial).[9]

In this case, the record supports a finding that Heiden was not subjected to interrogation when Sanchez asked him "if he was under any medication." First, the record reflects that the officers were not engaged in a criminal investigation at the time the question was asked. Sanchez testified that, prior to Heiden getting out of his car, he had not observed any criminal activity and did not have any reason to believe that Heiden might have been involved in any kind of criminal activity. Rather than investigating a crime, the officers were at the residence to execute a civil protective custody order to transport Heiden to a state hospital for a mental-health evaluation. When asked if the "sole reason" he was at the residence was "to take [Heiden] into custody on [the trial court's] order," Sanchez testified, "True." Furthermore, the record supports a finding by the district court that this purpose was communicated to Heiden. Sanchez testified that the officers "informed him of the order and . . . our purpose for being there." Thus, the district court could have found that Heiden would have perceived that the question Sanchez asked was not related to a criminal investigation.[10] *See Innis*, 446 U.S. at 301 (definition of interrogation "focuses primarily upon the perceptions of the suspect"). Sanchez also testified that when he found the pill bottle in Heiden's pocket, he was not conducting a narcotics investigation, and he did not know if there

---

[9] *See also Camacho v. State*, No. 08-05-00089-CR, 2006 Tex. App. LEXIS 5338, at *12 (Tex. App.—El Paso June 22, 2006, no pet.) (not designated for publication) (defendant suspected of narcotics possession; narcotics discovered in vehicle; officer asked suspect "if he had any other narcotics on his person"; question held to be interrogation).

[10] Although Heiden had been placed in handcuffs, the officers had advised Heiden that they had done so "for safety purposes." Also, Sanchez testified that the officers did not tell Heiden he was under arrest.

12

were narcotics in the bottle. Therefore, the district court could have impliedly found that Sanchez asking Heiden "if he was under any medication" was not a question that Sanchez should have known was "reasonably likely to elicit an incriminating response," because Sanchez had no reason to suspect Heiden of narcotics possession. *See id*. at 301-02 (officers "cannot be held accountable for the unforeseeable results of their words or actions").

Additionally, the district court could have impliedly found that, in asking the question, Sanchez was simply trying to determine whether Heiden's erratic behavior was being influenced by whatever medication, if any, Heiden might be "under." Sanchez testified that he did not recall having contact with Heiden before this incident. Therefore, Sanchez testified, he did not know if Heiden was a dangerous or a peaceful person. However, Sanchez had observed Heiden become "agitated" with his father when the officers informed Heiden of the order to take him into custody. When asked to explain what he meant by "agitated," Sanchez explained,

A:     He was—he was angry. At any time he could become violent.

Q:     Okay. Was he moving his arms around? Was he shouting?

A:     He was shouting.

Q:     Was he cursing at his father?

A:     Yes.

Q:     Was he calm and in control of himself?

A:     No, he was not.

13

Additionally, Sanchez knew that he was taking Heiden into custody pursuant to an order requiring Heiden "to submit to medical examination for mental illness." Thus, the district court could have impliedly found that Sanchez had reason to believe that Heiden presented a threat to himself and others, and that Sanchez asked the question about medication in order to determine Heiden's physical condition. If Heiden was on medication, it would be important that the medication be documented to ensure that he continue to receive it. Such a question, the district court could have impliedly found, was part of a routine police procedure normally attendant to taking people into custody under such circumstances. *See Sims*, 735 S.W.2d at 917-18 ("[W]e hold that the questions concerning appellant's physical condition, such as whether appellant was sick, injured, diabetic, or epileptic, and whether appellant had any physical disabilities or impairments, are questions of legitimate concern to the police at any time a person is arrested and taken into custody because the police will be responsible, to some degree, for the arrested person's care and physical well-being. Because of this legitimate concern, we hold that such questions are also among those types of questions normally attendant to arrest and custody, and are not interrogation protected by the fifth amendment."); *see also United States v. Bishop*, 66 F.3d 569, 572 n.2 (3rd Cir. 1995) (concluding that district court did not err in finding that question by officer to suspect who had been limping about "what was the matter with his leg" was "part of the booking procedure designed to fulfill the government's obligation to provide medical attention if necessary"); *Colon v. State*, 256 Ga. App. 505, 568 S.E.2d 811, 813-14 (Ga. Ct. App. 2002) (holding that "police officers have the responsibility to ask medical questions as part of routine booking in order to fulfill the government's obligation to provide medical treatment to one in custody"); *State v. Geasley*, 85 Ohio

14

App. 3d 360, 619 N.E.2d 1086, 1093 (Ohio Ct. App. 1993) ("The police must be permitted some leeway into inquiring into the present medical condition of the arrestee. The purpose of such inquiry is not to elicit incriminating responses, but rather to ensure the safety and well-being of the suspect while in the custody of the police. Accordingly, asking an arrestee whether he has recently seen a physician, is taking medication, or has any medical condition requiring special treatment is a legitimate police concern when booking a suspect."). Because the record supports a finding by the district court that Heiden was not subject to custodial "interrogation" when Sanchez asked him "if he was under any medication," we conclude that the district court did not abuse its discretion in admitting Heiden's answer to the question.

Finally, we address the seizure of the methamphetamine from inside the prescription bottle. The Fourth Amendment prohibits the search or seizure of closed containers without a warrant in the absence of exigent circumstances. *United States v. Chadwick*, 433 U.S. 1, 15 (1977); *State v. Porter*, 940 S.W.2d 391, 393 (Tex. App.—Austin 1997, no pet.). This prohibition has been applied to prescription bottles. *See Howard v. State*, 599 S.W.2d 597, 603 (Tex. Crim. App. 1980). However, there are exceptions to the warrant requirement. One such exception is the "plain view" doctrine. *Texas v. Brown*, 460 U.S. 730, 736 (1983). An officer may seize items found in plain view without a warrant if the officer was lawfully on the premises or otherwise properly in a position to view the object, and if it was immediately apparent to the officer that the item was evidence of criminal activity. *See Horton v. California*, 496 U.S. 128, 134-36 (1990); *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991); *Arrick v. State*, 107 S.W.3d 710, 719 (Tex. App.—Austin 2003, pet. ref'd). "Immediately apparent" simply means that there is probable cause to associate the item with criminal activity. *See Brown*, 460 U.S. at 741-42; *Walter v. State*,

15

28 S.W.3d 538, 541 (Tex. Crim. App. 2000); *Arrick*, 107 S.W.3d at 719. "[P]robable cause is a flexible, common-sense standard." *Brown*, 460 U.S. at 742. "It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime." *Id*. (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

Here, the record supports a finding by the district court that the State satisfied the plain view doctrine. As we have already explained, Heiden waived any error regarding the seizure of the prescription bottle from Heiden's pocket. Thus, the only question is whether, once Sanchez possessed the bottle, he had probable cause to open it without a warrant. Sanchez testified that Heiden told him the bottle contained "meth." Such an admission would "warrant a man of reasonable caution in the belief" that the bottle contained contraband. Sanchez also testified that he did not open the bottle until after Heiden made this statement. The State elicited the following testimony about what Sanchez did after being informed that the bottle contained methamphetamine:

Q:      Now at that point did you look in the bottle to see what was there?

A:      Yes, I did.

Q:      Did you recognize what you saw based on your training and experience?

A:      Yes.

Q:      Is that consistent with what Mr. Heiden had told you?

A:      Yes, it was.

Q:      Is it legal to possess methamphetamine?

A:      It's not legal.

16

Thus, the record supports a finding by the district court that, before Sanchez searched the inside of the prescription bottle and seized its contents, he had probable cause to believe the bottle contained contraband. *See Brown*, 460 at 739-40, 742-43 (warrantless seizure of green balloon found in suspect's vehicle authorized because there was probable cause for officer to believe balloon contained narcotics); *Jones v. State*, 565 S.W.2d 934, 936 (Tex. Crim. App. 1978) (holding that warrantless seizure of pistol found in suspect's apartment was authorized because "contraband in plain view . . . may be lawfully seized by an officer who is lawfully on the premises"); *Williford v. State*, 127 S.W.3d 309, 313 (Tex. App.—Eastland 2004, pet. ref'd) (warrantless seizure of computer authorized because there was probable cause for officer to believe computer contained child pornography); *Arrick*, 107 S.W.3d at 719 (warrantless seizure of appellant's shoes authorized because there was probable cause for officers to believe murder victim's blood might be found on shoes); *see also Michigan v. Long*, 463 U.S. 1032, 1050 (1983) (holding that if officer, when conducting legal search for weapons, "discover[s] contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances"); *Morrison v. State*, No. 03-06-00090-CR, 2008 Tex. App. LEXIS 7512, at *9 (Tex. App.—Austin Oct. 2, 2008, no pet.) (not designated for publication) (holding that, after appellant admitted to officer that item in his pocket was marihuana, officer was "justified in retrieving the contraband"). Thus, the district court did not abuse its discretion in admitting the methamphetamine found in the bottle.

We overrule Heiden's sole issue on appeal.

17

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   March 25, 2009

Do Not Publish

18